[Civ. No. 14262. First Dist., Div. One. May 23, 1950.]

ESTELLE AHERN et al., Respondents, v. S. H. KRESS & COMPANY (a Corporation) et al., Appellants.

Hoge, Pelton & Gunther, Leo V. Killion and Reginald M. Watt for Appellants.

Doyle & Clecak for Respondents.

SCHOTTKY, J. pro tem.—Plaintiffs brought this action to recover for personal injuries resulting to plaintiff Estelle M. Ahern from a fall in the store of defendant S. H. Kress & Company. The cause was tried before a jury which brought in a verdict of $7,000 for plaintiff. Defendants have appealed

from the judgment entered on the verdict, contending that the evidence is insufficient, as a matter of law, to establish any negligence on their part.

It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence it must appear from the record that, accepting the full force of the evidence adduced together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes such prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party.

Bearing in mind this familiar rule, we shall set forth a brief summary of the evidence as shown by the record.

On September 23, 1946, at about 4:30 p. m., the plaintiff wife, Estelle Ahern, entered the store of defendant Kress & Company at 2712 Mission Street in San Francisco to shop for some cups and saucers. She entered the right-hand entrance of the store and proceeded down the left side of the aisle on the extreme right of the store. This aisle was approximately 100 feet long and had a solid line of counters on the right-hand side, and on the left had counters which were broken by aisles running at right angles the width of the store. There were few people in the store at that hour, and Mrs. Ahern testified that she did not notice anyone in her aisle as she walked along the aisle after entering the store, nor did she notice anyone ahead of her when she turned around at the end and started to come back the same aisle. Like the average shopper in a store carrying the wide variety of merchandise sold by defendant company, she was "looking at the different things on the different counters" as she proceeded back along the aisle. After she had traveled back about half the length of the aisle, she slipped and fell in a puddle of liquid that, according to the testimony of the store manager, defendant Paul La Barbara (sued herein as T. La Bara), was about 12 inches in diameter and was located "directly underneath the part of the counter that juts over the aisle . . . partly in the aisle and partly underneath." The counter under which the puddle was located was one which contained paints, oils, turpentine, paint remover and thinner and related sub-

stances. A salesgirl was on duty at this counter and salesgirls were on all counters close to it and the store was very well lighted.

Plaintiff Estelle Ahern testified that the liquid on the floor which caused her to fall "looked to me as though it was an oily substance of some kind . . . it had kind of a shine to it." Her husband, plaintiff Andrew Ahern, examined her clothing and found what appeared to him to be oily spots on her slacks and coat. The store manager, defendant La Barbara, testified that he used rags and paper to clean up the puddle and after mopping it up he covered the spot with a paper bag "Just long enough to absorb the moisture"; that the liquid was water and had no odor; that there was no water faucet within 50 or 60 feet of the puddle and that there were no leaks from the roof. The day was clear and there was no question of rain involved.

Appellants argue that there is no direct or circumstantial evidence to show that defendant store was in any way responsible for the presence of the puddle on the floor, or that the puddle was on the floor for a sufficient length of time to bring into operation the rule of constructive notice to defendant store. Appellants state correctly that "The law provides that a storekeeper is not an insurer of the safety of his customers, but owes to the customers the duty to exercise reasonable care in keeping the store premises safe for the customers. While the 'degree' of care is 'reasonable' care, the 'quantum' of care necessary to constitute 'reasonable' care is more exacting and greater in a public store such as that of defendant 'Kress store' than in an apartment house lobby or the like."

In *Louie* v. *Hagstrom's Food Stores,* 81 Cal.App.2d 601 [184 P.2d 708], this court said (pp. 606-607-608): "Admittedly, the plaintiff, as a customer, was the business invitee of defendant. Admittedly, the defendant is not an insurer of the safety of business visitors. The true rule is that the owner or occupier of business premises owes to invitees a duty to exercise reasonable care in keeping the premises reasonably safe for such invitees. (*Tuttle* v. *Crawford,* 8 Cal.2d 126 [63 P.2d 1128]; *Owen* v. *Beauchamp,* 66 Cal.App.2d 750 [152 P.2d 756]; *McKellar* v. *Pendergast,* 68 Cal.App.2d 485 [156 P.2d 950].) To impose liability for injuries suffered by an invitee due to the defective condition of the premises, the owner or occupier 'must have either actual or constructive knowledge of the dangerous condition or have been able by the

exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it.' (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841] ; see, also, *Rothschild* v. *Fourth & Market St. R. Co.,* 139 Cal.App. 625 [34 P.2d 734] ; *Stoddard* v. *Roberts Public Markets, Inc.,* 27 Cal.App.2d 166 [80 P.2d 519] ; *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595 [111 P.2d 346] ; *Williamson* v. *Hardy,* 47 Cal.App. 377 [190 P. 646].)

"The same rule is adopted by the Restatement of Torts. Section 343 reads as follows : 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care should discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them.

". . . The true rule is that, while plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it. In *Rothschild* v. *Fourth & Market St. R. Co.,* 139 Cal.App. 625, 627 [34 P.2d 734], the court stated : 'However, the question whether the condition which caused the injury had existed so long as to be discoverable by the defendant within a reasonable time is one for the jury.'

"In *Tuttle* v. *Crawford,* 8 Cal.2d 126, 130 [63 P.2d 1128], the Supreme Court stated the rule as follows : 'Whether the floor of a store or public market place was so negligently maintained as to render the person responsible for its condition liable in damages is a question of fact to be decided by the jury.'

"The same court in *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 807 [117 P.2d 841], declared : 'Further, the question of whether the condition which caused the injury had existed so long as to be discoverable by the store owner within a reasonable time is for the jury.'

"The exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and

remedied, cannot be fixed, because, obviously, it varies according to the circumstances. A person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious.''

Appellants cite the case of *Girvetz* v. *Boys' Market, Inc.,* 91 Cal.App.2d 827 [206 P.2d 6], which involved a suit by a plaintiff who slipped on a banana peel in defendant's vegetable market. The only evidence as to how long the peel had been there was the testimony that someone had seen it there a minute and a half before plaintiff fell. The verdict of the jury was in favor of plaintiff and the trial court granted a motion for judgment notwithstanding the verdict. In affirming the judgment, the appellate court said: ''The location of her fall, therefore, was such as to afford no ground for an inference that the dangerous condition was created by the defendant proprietor, it being as reasonable to infer that the banana was dropped by a customer after leaving the vegetable check stand as to infer that it got there in any other manner.

''The only evidence as to how long the dangerous condition had existed prior to plaintiff's fall was the testimony of a customer that she saw the banana on the floor 'a good minute and a half' before the happening of the accident.'' (P. 828.)

''. . . But where the only evidence is that the foreign object has been on the floor of the market for 'a minute and a half,' it must be held that it is insufficient to support an inference that the defendant proprietor failed to exercise the care required of him.'' (P. 831.)

Appellants also cite *McKellar* v. *Pendergast,* 68 Cal.App.2d 485 [156 P.2d 950], in which the plaintiff sought to recover for injuries received when she slipped on a greasy-like substance on the floor of an apartment house lobby. There was no evidence to indicate how the substance came to be on the lobby floor, and in affirming a judgment in favor of defendants notwithstanding the verdict the court said: ''Applying this rule to the evidence reviewed it is readily apparent that such evidence presented no basis for the conclusion of the jury other than mere speculation. Or, stated in another fashion, it is no more speculative to presume that the oily substance was dropped by another than it is to speculate that the janitor dropped it. In either event the conclusion reached can be only the result of speculation, and therefore was not sufficient

to support the verdict of the jury. (*Reese* v. *Smith*, 9 Cal.2d 324 [70 P.2d 933].) Nor can a plaintiff recover where the facts go no further than to establish a possibility that defendant's negligence was the proximate cause of the injury. (*Wilbur* v. *Emergency Hospital Assn.*, 27 Cal.App. 751 [151 P. 155].)'' (P. 489.)

''. . . An owner of premises is only responsible for not removing a dangerous foreign substance brought upon the premises by others if the owner actually knew of the presence of such substance, or if it had been present for a sufficient length of time that he should have known of its presence. [Citing cases.]'' (P. 491.)

In *Owen* v. *Beauchamp*, 66 Cal.App.2d 750 [152 P.2d 756], also cited by appellants, the court held that the trial court properly directed a verdict for defendant where the plaintiff slipped on a piece of dental wax in defendant dentist's reception room and there was no evidence as to who dropped the wax or how long it had been there. The court said, at page 754: ''The wax found on appellant's shoe could have been imported by another invitee or by an employee of respondent one minute before appellant fell, without the knowledge of respondent. Inasmuch as the evidence of the presence of the wax on the floor did not warrant an inference of appellee's negligence the court correctly instructed the jury to return a verdict for defendant. (*Lacey* v. *Porter*, 103 Cal. 597 [37 P. 635].)''

Respondents in reply argue that the location of the puddle justifies an inference that the dangerous condition was created by defendants and also that the evidence was sufficient to justify the inference that the puddle had been on the floor long enough for appellant company or its employees in the exercise of ordinary care for the safety of its patrons to have discovered and removed the danger. They cite *Louie* v. *Hagstrom's Food Stores, supra*; *Travis* v. *Metropolitan Theatres Corp.*, 91 Cal.App.2d 664 [205 P.2d 475]; *Tuttle* v. *Crawford*, 8 Cal.2d 126 [63 P.2d 1128].

In *Louie* v. *Hagstrom's Food Stores, supra*, a customer in a super market fell in a pool of syrup which had formed from a broken syrup bottle in a bag which was found near by. This pool was right at the entrance door of the store. A man with a broom who customarily swept the floors had not been there for approximately 25 minutes and a clerk at the check stand could easily have seen the condition as her duties required her to face the front of the store on frequent occasions. There was

evidence that there was an egg-shaped puddle of syrup of about six or eight inches; that the syrup was quite thick and possessed adhesive qualities; that the day was cold and that on such a day the syrup would flow quite slowly. In affirming a judgment for plaintiff this court said, at pages 608-609: "It is a reasonable inference that for this heavy thick fluid to have seeped through the paper bag and to have formed a puddle of appreciable proportions would take a substantial period of time. When this evidence is considered, keeping in mind that this was a very busy grocery and vegetable store, and keeping in mind the obvious dangers that exist in such establishments, we think there was ample evidence, under the rule of the cited cases, to sustain the jury's implied finding that this condition existed long enough so that defendant should, in the exercise of ordinary care, have discovered and remedied it."

In *Travis* v. *Metropolitan Theatres Corp., supra,* the plaintiff was injured when she slipped in a deposit of vomit as she was walking between rows of seats to take her seat in a theatre. Defendant contended that plaintiff had not shown how long the deposit had remained on the floor. The plaintiff introduced evidence that part of the deposit had formed a crust on top but was moist in the middle. In affirming a judgment for plaintiff the appellate court said, at page 668: "From such evidence the jury could reasonably infer that a substantial period of time had elapsed since the occurrence that caused the deposit. . . .

"The evidence is sufficient to sustain the jury's implied finding that the condition existed long enough to require the agents of appellant in the exercise of ordinary care to discover and remove it. . . ."

In *Tuttle* v. *Crawford, supra,* a judgment for a plaintiff was affirmed where she had fallen in the vegetable department of a store when she slipped on some lettuce leaves on a wet cement floor. The condition had been noted by an employee who said he had swept the wet space five to eight minutes before the accident, but the court said that if he had swept "he swept poorly." The court also said that it did not follow that plaintiff was negligent because she did not see the lettuce leaves. The court said further, at page 130: "That it is the duty of storekeepers to keep the floors of their premises safe for those who must pass over them in the transaction of their business must be conceded. The fact that the attention

of persons who visit public markets is attracted by the display of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the necessity of exercising care to the end that the floor spaces and aisles allòtted to the use of customers should be made safe and kept fit for such purpose.

" 'It is the rule in California that the keeper of a public place of business is bound to keep his premises and the passageways to and from it in a safe condition, and must use ordinary care to avoid accidents or injury to those properly entering upon his premises on business.' [Citing cases] . . .''

It is apparent from the foregoing cases that every case must be judged upon its own facts in applying the legal principles involved. In the instant case we are convinced that, accepting, as we must, the full force of the evidence adduced together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in conflict therewith, the judgment in favor of plaintiffs finds support in the record.

The oily puddle in which plaintiff Estelle Ahern fell was directly underneath the part of the counter that juts over the aisle, partly in the aisle and partly underneath. This counter contained paints, oils, paint remover and thinner and related substances. The puddle appeared to be composed of an oily substance. There was no broken bottle, can, bag or anything similar on the floor near the puddle, from which this oily substance could have come. Defendant La Barbara, manager of the store, testified that it was a superficial puddle lying on top of the floor and that it was about 12 inches in diameter, which would indicate that it was somewhat circular in shape. There was a salesgirl of defendant store's on duty in charge of the counter. We believe that from those facts the jury was entitled to draw an inference that the puddle was the result of some leakage from the contents of the counter, and that the jury was also entitled to infer that this circular oily puddle, 12 inches in diameter, had taken some time to accumulate, because if it had accumulated rapidly it would not have been confined to such a small area. The store was well lighted, there were few customers in the store at that hour, and there were salesgirls at practically all the counters. As hereinbefore stated, plaintiff Estelle Ahern walked the full length of the aisle on the left-hand side, a distance of about 100 feet, and then came back along the right-hand side, looking at the various things on the different count-

ers, a distance of about 50 feet, when she slipped in the puddle and fell. She did not notice anyone in the aisle either going down the aisle or coming back.

There is no direct evidence as to how long the puddle was on the floor but, as was held in *Louie* v. *Hagstrom's Food Stores, supra,* that fact, like other facts, may be proved by circumstantial as well as by direct evidence, and it is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it.

If, as we believe, the jury was entitled to draw an inference that the puddle was the result of some leakage from the paints counter, it was entitled also to infer that the accumulation of the puddle was due to some negligence of defendants. And even if the jury was not entitled to draw the inference that the accumulation of the puddle was caused by defendants, we believe that the size, location, shape and nature of the puddle, together with the other facts and circumstances hereinbefore set forth, were sufficient to sustain the implied finding of the jury that it had taken the puddle a sufficient length of time to accumulate, so that defendants by the exercise of reasonable care should have discovered and remedied it. There is a striking similarity between the instant case and that of *Louie* v. *Hagstrom's Food Stores, supra,* where the court held that it was a reasonable inference that it would take a substantial amount of time for the syrup to have seeped through the bag and to have formed the puddle there in question.

There is nothing in the cases cited by appellants that in our opinion compels a different conclusion than the one at which we have arrived. We have hereinbefore reviewed those cases and the factual situations in them are different than the facts in the instant case. While under the evidence the jury might well have arrived at a different verdict, yet, taking the evidence as a whole, we believe it was a matter for the jury to determine, and that their verdict in favor of plaintiffs finds ample support in the record.

In view of the foregoing, the judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 20, 1950. Edmonds, J., and Schauer, J., voted for a hearing.