[Civ. No. 7890. Third Dist. Apr. 9, 1951.]

MACAL IMPROVEMENT COMPANY (a Corporation), Appellant, v. ROY HOSKINS et al., Respondents.

Yates F. Hamm, Richard E. Arnason and Hoey, Hoey & Fenstermacher for Appellant.

Sinclair M. Dobbins and Walter W. Weir, Jr., for Respondents.

ADAMS, P. J.—Plaintiff brought this action against Roy Hoskins and his wife, Ruth, seeking a money judgment for $1,195.25 for rental of a tractor from it, and other expenses incidental to the use of same. Defendants denied the allegations of the complaint, and the case was tried by the court sitting without a jury. Findings in favor of defendants were

made and judgment entered accordingly. From that judgment this appeal has been taken.

The evidence shows that on January 24, 1947, Mr. Hoskins entered into a written agreement with one K. C. McGee by which McGee agreed to move earth for a dam to be constructed upon land belonging to Mrs. Hoskins, for the cost of construction of which the federal government had agreed to contribute $1,412.20. In order to undertake the work for which he was employed McGee rented the tractor in controversy from plaintiff, agreeing to pay a rental of $5.00 an hour for every hour the equipment was used, and to pay the operating expenses of same. McGee employed Floyd Greiner, who had previously been in the employ of plaintiff, to operate the tractor, and the work was commenced. After Greiner had been at work for a few days or weeks, McGee gave him two checks for his services, both of which checks were dishonored, and made good by appellant. It appeared that McGee was then out on bail after having been arrested for issuance of a check to another person without funds to cover same, and, in short, was in such financial trouble that defendants became concerned for fear the dam would not be completed on time. McGee, however, continued to use the tractor which he had rented from plaintiff until it became disabled and plaintiff took it off the job. In the meantime, Mr. Hoskins paid Greiner his wages and also paid for gas and oil furnished for the tractor, his intention, as he testified, being that what he paid for gas and oil would be deducted from the, sum due on McGee's contract.

McGee having failed to pay to plaintiff the rental due it under his contract, plaintiff sued defendants, alleging that they had entered into an oral contract with it for rental of the tractor and had agreed, in addition, to reimburse plaintiff for moneys which it had paid to Greiner, and had also agreed to pay additional expenses incurred to keep the equipment in good repair, and for transportation of same to Antioch when the tractor became disabled.

The trial court found that the allegations of plaintiff's complaint were not true and that defendants were not indebted to plaintiff in any sum whatsoever.

On this appeal plaintiff contends that the trial court erred in its application of the law to the facts, that plaintiff should recover on an implied promise or quasi-contractual obligation to pay it, since defendants enjoyed benefits from the work

done by the tractor upon their land, and also contends that the evidence entitled it to judgment.

There is a definite conflict between the evidence adduced by plaintiff and the testimony of Mr. Hoskins in behalf of his wife and himself. Louis H. Roberts, president and superintendent of appellant, stated that he told Mr. Hoskins that they had not been paid rental due upon the tractor and wanted to know how they were going to be paid; that Mr. Hoskins stated that he did not believe that McGee was responsible, but that he was capable, and that if appellant would not "pull the machine off the job" before the job was completed he would pay the rental; that he would also pay the operator and would pay the fuel bills as they became due; and that Hoskins further agreed that he would pay appellant the amount which it had paid Greiner in lieu of the dishonored McGee checks. He also testified that Hoskins had said that the job would have to be approved by the Bureau of Reclamation before he got any money, and that as soon as he did he would call plaintiff and pay it before any other bill was paid; that Hoskins said that other parties had put liens against the property but that he thought that after the lien claimants were paid there would be something left, and that plaintiff would get whatever was left.

Greiner, to some extent, corroborated the testimony of Roberts, as he stated that Hoskins agreed to pay him and did so thereafter; that he heard a conversation between Roberts and Hoskins during which Mr. Hoskins said: "I will see—I will see that you get your money on the job." He also testified that Hoskins paid for the oil, gas, fuel and maintenance of the equipment while it was on the job, and paid him (Greiner) his wages; that McGee, when he was there, supervised the work, and when he was not, sometimes Hoskins supervised it. There was some other testimony which tended to show that Hoskins had assumed liability to appellant in order to get the job on the dam completed, and to take care of other creditors.

As opposed to the testimony of appellant's witnesses, respondent Hoskins testified that Mr. Roberts had come to see him and said he was worried over the deal, and that when a check given him by McGee came back and there was no payment he then told Roberts that he could give him $750 to pay those bills, but that "I said the only possible thing I could do under the contract, I could not give him another nickel, that I would go ahead and pay the gas bills and the repairs

and have the blacksmith and tractor drivers [paid], and what money was left, I would hold until the completion of the job, and so he could get what was left.'' He stated that Roberts told him he was satisfied; that at no time did he agree to hire this tractor and pay rental for it, nor for the repairs (after being broken down) or the transportation, and that he knew nothing about it. He also testified that Mr. Roberts said he was taking the tractor away; that McGee had been talking to. him on the 'phone and had rented another tractor which was more reasonable, and that Roberts had agreed that he might have a better deal on a cheaper rent; that Mr. Roberts ''wanted to know if I would give him any money, and I told him, no, I would not pay out another nickel until the job was cleared up and everything was settled.'' He stated that at no time did he ever receive a bill from appellant for rental, and that he never told Roberts he would guarantee the payments due from McGee to appellant, and that Greiner never told him that appellant was going to remove the tractor; that he never guaranteed Macal a nickel.

The record shows that after the testimony in the case was first closed and findings and judgment entered in favor of defendants, and after about a year had elapsed and the job had been completed, the case was reopened and additional testimony taken. At that time Hoskins testified that when plaintiff's equipment came on the job he (Hoskins) did not know that it belonged to appellant but thought it was owned by McGee; that he was dealing with McGee and that all he was interested in was getting the dam completed, because his contract was with McGee, not Roberts. He stated that the government agency paid him about $1,412.20, the total amount that it had contracted to pay, and there was no more money coming from the government; that the total amount due McGee was $2,211.84, from which was deductible $1,571.51 which he had paid out for McGee, and that $640.33 was due McGee on his contract; that McGee had procured another man to finish the job and he (Hoskins) had paid that man.

From the foregoing it is apparent that there is a direct conflict between the testimony of Roberts, Greiner and McGee and the testimony of Hoskins. It is equally apparent that there is ample evidence to support the finding of the trial court in favor of defendants. It is said in 2 California Jurisprudence, section 543, page 921, that: ''A judgment will not be reversed because the evidence is conflicting. On the contrary, the rule is established by a host of decisions that an appellate

court will not disturb a verdict of a jury or findings of a trial court when there is a substantial conflict of evidence on material points and when there is some evidence to support the verdict or findings." (Also see 1 Cal.Jur. 10-Yr.Supp., p. 563 et seq., for a multitude of additional authorities to the same effect, and 1 Cal.Jur. 10-Yr.Supp., 1950 Pocket Part, pp. 236, 237.) Under the foregoing rule this court may not disturb the findings of the trial court which heard the witnesses, observed their manner of testifying, and elected to accept the testimony of Mr. Hoskins. Also see *Ahern* v. *S. H. Kress & Co.,* 97 Cal.App.2d 691, 692 [218 P.2d 108] (hearing in Supreme Court denied), in which it is said: "It is a rule too well established to require the citation of authorities that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence it must appear from the record that, accepting the full force of the evidence adduced together with every inference favorable to the prevailing party which may reasonably be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes such prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference and presumption which may fairly be deduced from the evidence should be resolved in favor of the prevailing party."

We are bound by the foregoing rule.

The judgment is affirmed.

Peek, J., and Van Dyke, J., concurred.