[Civ. No. 17528. First Dist., Div. Two. Dec. 26, 1957.]

BERYL McKENNEY, Respondent, v. QUALITY FOODS, INC. (a Corporation), Appellant.

*Assigned by Chairman of Judicial Council.

350

Hadsell, Murman & Bishop for Appellant.

Hoberg & Finger and L. Chas. Gay for Respondent.

KAUFMAN, P. J.—Plaintiff brought this action to recover for personal injuries resulting from a fall in defendant's grocery store. The cause was tried before a jury which returned a verdict in favor of the plaintiff. Defendant appeals from the judgment and it is defendant's theory on this appeal that the evidence is insufficient, as a matter of law, to establish any negligence on its part; that the court erred in denying defendant's motions and in its instructions to the jury.

Defendant corporation operates a grocery store of the supermarket type in the Stonestown shopping center near San Francisco. Plaintiff, a 64-year-old widow, accompanied by her daughter-in-law, grandchild and another adult, entered defendant's market at about 4 p. m. on Thursday, March 12, 1953. Before that time she and her companions had been shopping for about two hours. They shopped in the meat and grocery departments of defendant's store for about 20-30 minutes. Defendant concedes that they did not go near the vegetable department which was located on the north side of the store. As the group arrived at defendant's checkstand number 5, plaintiff's daughter-in-law remembered that she needed butter and asked the plaintiff to go back and get some. Plaintiff's companions paid for the other purchases and moved on.

The plaintiff went back for the butter and then after a few minutes returned to the same checkstand and waited in line. She paid for the butter and, after having it packaged by the clerk, she moved to the end of the counter, the last part of which extended to the terrazzo corridor. As the plaintiff took

her first step on the terrazzo corridor, she fell. Although there is some conflicting evidence, that most favorable to the plaintiff, which we are required to accept, is to the effect that she stepped on a piece of lettuce which caused her left foot to slip. Immediately after falling, plaintiff saw a piece of lettuce about the size of a half dollar protruding beyond the side of her left shoe. One of defendant's employees removed a portion of this lettuce but some remained on her shoe and was seen by the nurse at the hospital who subsequently removed the shoe. Residuals of this greenery were still on the shoe at the time of the trial. Shortly after the fall, the police officer, who was subsequently called in, saw a fresh piece of lettuce about the size of his hand about three feet from where plaintiff lay and observed one of defendant's employees pick it up from the aisle. One of plaintiff's companions also saw a few pieces of vegetable matter on the floor near plaintiff's feet. Defendant's employees testified that they did not see any lettuce on the floor and denied removing any lettuce from plaintiff's shoe.

On the above evidence, defendant contends that, as a matter of law, the evidence fails to sustain the jury's implied finding that it was responsible for the vegetable matter on the floor or that it had either actual or constructive notice of its presence there. Defendant also raises certain errors in the instructions of the trial court. We think that the record amply supports the verdict.

In *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841], the law was clearly stated as follows at 806: "Where the dangerous or defective condition of the property which causes the injury has been created by reason of the negligence of the owner of the property or his employee acting within the scope of the employment, the owner of the property cannot be permitted to assert that he had no notice or knowledge of the defective or dangerous condition in an action by an invitee for injuries suffered by reason of the dangerous condition. Under such circumstances knowledge thereof is imputed to him. (*Saunders* v. *A. M. Williams & Co.,* 155 Ore. 1 [62 P.2d 260].) Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to

him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it."

■ As to the first issue, it is conceded that here the plaintiff was a business invitee and to whom the defendant owed a duty to exercise reasonable care in keeping the premises safe. (*Oldenburg* v. *Sears, Roebuck & Co.*, 152 Cal.App.2d 733 [314 P.2d 33]; *Raber* v. *Tumin*, 36 Cal.2d 654 [226 P.2d 574].) Plaintiff in order to recover must establish that the defendant breached that duty and that such breach was the proximate cause of the injury. (*Palmer* v. *Crafts*, 16 Cal. App.2d 370 [60 P.2d 533].) ■ The burden is on the plaintiff to prove every essential fact on which she relies. (*McKellar* v. *Pendergast*, 68 Cal.App.2d 485 [156 P.2d 950].) As no inference of negligence arises based simply upon proof of a fall on the owner's floor (*Vaughn* v. *Montgomery Ward & Co.*, 95 Cal.App.2d 553 [213 P.2d 417]; *Thomas* v. *Moore*, 146 Cal.App.2d 59 [303 P.2d 624]), we must turn to the record to discover if there are any facts from which the inference may be drawn that defendant was responsible for the presence of the lettuce on the floor.

■ The record reveals that defendant's market is one of several businesses occupying a common building and served with a common terrazzo corridor. Defendant is the only tenant of the building who sells vegetables. While all of the tenants participated in the cleaning of the corridor, defendant had assumed the duty of removing vegetable and other matter which fell thereon from the checkstands, a portion of which extended to the corridor.

Before entering defendant's market plaintiff and her companions had not been in the other area where vegetables were sold. They did not enter defendant's vegetable department. Plaintiff went through defendant's usual checking-out procedure which is as follows: the customer places his purchases on the revolving package platform extending beyond the entrance to the checkstand; the customer has nothing further to do with the handling of his purchases until the attendant has completely packaged them and handed them to the customer at the far end of the checkstand.

On the date in question, defendant carried five or more types of lettuce, of which only the Los Angeles head lettuce

was sold in a sealed cellophane bag. The other kinds of lettuce were sold in bulk tied with a flexible wire band. There was some evidence that the piece of vegetable matter found on plaintiff's shoe may have been of the Los Angeles type. The packaging and handling of the lettuce was done in defendant's basement. It was the custom of defendant's checkstand operators to remove the material that didn't look good or edible from lettuce and cabbage, if requested, and to remove greens at the bag rack at the far end of the checkout counter. For these defendant provided garbage receptacles under the checkstand. About five minutes before the accident, the attendant at checkstand number 5 removed lettuce or cabbage leaves from merchandise she was ringing up on the cash register.

Defendant knew that greens handled by its employees at the checkstand would fall from the counter to the floor, and therefore instructed its checkers that spilled greens were to be cleaned immediately after they fell and to inspect and sweep customers' aisles and the common corridor whenever necessary. Brooms and dustpans for this purpose were located between checkstands numbers 5 and 6. Defendant's janitor was employed only until 12 noon. After the janitor left, it was the duty of the checkers and baggers to sweep if they had the time.

Defendant's manager had no personal knowledge whether the area in question had been swept in the three hours preceding the fall but had inspected the area about 15 minutes before the accident and had seen no lettuce leaves. Defendant's assistant manager had been delegated the duty of seeing that the corridors and aisle walk by the checkstands were clean but had not inspected the area in question for several hours before the fall. One of defendant's checkers, Mr. Yonikian, testified that he had swept the general area of the corridor about five or ten minutes before the accident but stated that he did not sweep or inspect the customers' aisle in question. Two of the checkers at the adjoining checkstands denied that anyone had swept the area within the period Mr. Yonikian claimed to have been sweeping.

Mrs. Weidman, the checker at stand number 5, testified that she knew that foreign material "that might be injurious to people walking by the checkstand required sweeping" and that she swept the aisle to remove such hazards from the floor. She denied that anyone other than herself had swept in her area within one to two hours before the accident. She further

testified that she swept some greens from the floor in the general area of the checkstand about five minutes before the accident but not the aisle where customers were required to walk or the terrazzo area. Mrs. Weidman stated that she had inspected the aisleway a few minutes before the fall and found nothing to sweep up but later testified that there were pieces of greens in the aisle. Mr. Miramonte, who was ''bagging'' groceries at checkstand number 5 at the time of the accident, testified that 4 p. m. on the day in question had been such a busy time that the checkstand had been constantly busy for at least 20 to 30 minutes before the accident so that Mrs. Weidman had not had time to sweep within the 15 or 20 minutes before the accident.

The quantum of care which the law exacts is a question relative to the facts of each case. (*Tuttle* v. *Crawford,* 8 Cal. 2d 126 [63 P.2d 1128].) We think that from the above it can fairly be inferred that defendant was responsible for the vegetable matter on the floor and that plaintiff's fall was caused by slipping on such matter. In *Girvetz* v. *Boys' Market, Inc.,* 91 Cal.App.2d 827 [206 P.2d 6], cited by the defendant, the plaintiff slipped on a banana in an area outside of the checkstand. No evidence was submitted to explain the presence of the banana in the aisle. The evidence also indicated that the banana had been in the aisle for only a minute and a half. The court held that there was insufficient evidence to support the inference that the proprietor failed to exercise the care required of him. In the recent case, *Oldenburg* v. *Sears, Roebuck & Co., supra,* 152 Cal.App.2d 733, the plaintiff slipped on a piece of chalk on the sidewalk outside of the defendant's store. The appellate court reversed a verdict for the plaintiff as no evidence was presented that the defendant was in any way responsible for the presence of the chalk. There was no testimony that the defendant had chalk in stock at that time.

We think this case is similar to *Tuttle* v. *Crawford, supra,* 8 Cal.2d 126, where the defendants carried wet lettuce across the floor. After the plaintiff fell, she had vegetable particles and water stains on her clothing. The court's statement at 131 is especially pertinent here: ''But even if there were one or two lettuce leaves or portions of leaves on the floor, it does not follow that respondent was negligent in failing to see them. On this issue appellants' employee testified that he had swept the water from the space which had been made wet five or eight minutes before the accident occurred. If he swept,

he swept poorly, as the respondent's right stocking and dress bore evidence as to vegetable particles adhering to them.''

In *Ahern* v. *S. H. Kress & Co.,* 97 Cal.App.2d 691 [218 P.2d 108], the plaintiff slipped on a puddle of liquid located directly under a counter at which paints and oils were sold. The court held it was reasonable to infer that the puddle was the result of leakage from the counter. In the instant case, the accident occurred close to the area where vegetable matter was removed before packaging.

As to the question of the proximate cause of plaintiff's fall, in *Goldsmith* v. *Mills,* 130 Cal.App.2d 493 [279 P.2d 51], where the plaintiff fell in the defendant's store but was unable to state the cause of her fall, this court said at 496: ''Since Mrs. Goldsmith did not know what caused her fall, it is necessary to determine the cause by drawing inferences from the evidence presented. Mrs. Henderix testified that there were papers littered on the floor in approximately the same spot where respondent fell a few minutes prior to the accident. She also observed the papers there immediately after the accident. It is logical to infer that the papers made the footing more slippery than the normal floor surface, thereby causing the fall. Although not on all fours factually, *Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497 [259 P.2d 1010] supports the view that the jury could logically have concluded the fall resulted from the loose papers. In the MacFarlane case plaintiff fell and immediately afterward felt a sticky substance on her hands. This court held that a jury could draw the inference that the fall was caused by an excess amount of wax, and it was error to grant a nonsuit. (*Cf. Sokolow* v. *City of Hope,* 41 Cal.2d 668, 670-672 [262 P.2d 841.) Mrs. Henderix' actual knowledge as an employee of the presence of the papers on the floor is properly imputed to appellants. Likewise their own failure to place all papers in the receptacle, and thus allowing them to fall on the floor of the aisle, violated the duty owed to respondent and was active negligence.'' Here there was evidence that the checkstand employees were responsible for keeping the aisles clean and could not do this if they were too busy and that the afternoon in question had been a busy one, as well as the testimony of the attendant at checkstand number 5 that there were greens in the aisle. Therefore the jury could fairly infer that the hazard which caused the fall had been created by the defendant. (*Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497 [259 P.2d 1010].)

''Negligence may be established by circumstantial evi-

dence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts." (*Jones* v. *Hotchkiss,* 147 Cal.App.2d 197 at 202 [305 P.2d 129].)

As to the second issue, defendant contends that the plaintiff failed to prove its actual or constructive knowledge of the hazardous condition. In *Louie* v. *Hagstrom's Food Stores,* 81 Cal.App.2d 601 [184 P.2d 708], the plaintiff fell on a puddle of syrup which had been on the floor for a substantial period of time. In affirming a judgment for the plaintiff, the court said at 607: "But the defendant contends that before the question can arise as to whether the owner or occupier should have discovered the defective condition there must be some evidence of how long the defective condition existed, and it urges that there is no such evidence here. It seems to be the thought of defendant that such evidence must be direct evidence. That is not the law. ▮ The true rule is that, while plaintiff must prove that the defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. ▮ It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it."

The cases cited by the defendant do not help its position. In *Gold* v. *Arizona Realty etc. Co.,* 12 Cal.App.2d 676 [55 P.2d 1254], and *Frank* v. *J. C. Penney Co., Inc.,* 133 Cal.App. 2d 123 [283 P.2d 291], there was no evidence to show that the hazard had been present for any length of time. *McKellar* v. *Pendergast,* 68 Cal.App.2d 485 [156 P.2d 950], and *Owen* v. *Beauchamp,* 66 Cal.App.2d 750 [152 P.2d 756], were distinguished in *Sanders* v. *MacFarlane's Candies, supra,* 119 Cal. App.2d 497, as follows at 502: "The McKeller case is not in point. The plaintiff slipped on some spots of oily substance on the lobby floor of an apartment house; she contended they were garbage drippings, negligently dropped by the janitor, but there was no evidence identifying the substance as garbage drippings; the District Court held that any other person could have left the drops of unknown oily substance as well as the janitor. The Owen case is nearer to the one before us. There the plaintiff slipped in a dentist's office on some dental wax of the same kind as used by the defendant dentist. The District Court affirmed a judgment on a directed verdict for defendant

saying that the wax could have been imported by another invitee or by an employee of respondent one minute before plaintiff fell, without the knowledge of defendant. It may be doubted whether the fact that the material on which plaintiff slipped was identified as dental wax as used by defendant did not reasonably and fairly permit an inference of probability that the wax was dropped by defendant or by an employee within the scope of his employment. (There was a dissent in the District Court and two justices voted for hearing in the Supreme Court.) However, even if the decision were correct, each case of this kind must be judged on its own facts (*Ahern* v. *S. H. Kress & Co.*, 97 Cal.App.2d 691, 698 [218 P.2d 108]). . . ."

Our view here is also supported by *Hale* v. *Safeway Stores, Inc.*, 129 Cal.App.2d 124 [276 P.2d 118], and *Dillon* v. *Wallace*, 148 Cal.App.2d 447 [306 P.2d 1044]. In the Hale case, the plaintiff slipped on a banana in the aisle of the defendant's store near the fruit counter. The banana had some small teeth marks apparently made by a child. The plaintiff testified that there were no children in the store while she was there. The court reversed a judgment of nonsuit on the ground that there was some evidence from which a jury might have found that the banana had been on the floor long enough to charge defendant with knowledge. In the Dillon case, recently decided by this court, the plaintiff fell on a sprig of parsley on the floor of the grocery department of defendant's market. The defendant knew that loose bits of vegetable matter fell out of the customers' carts. The court held that "the jury could reasonably find that with knowledge of the recurring danger from loose vegetable matter falling through the carts appellants had not used ordinary care for the protection of their customers from this known hazard," at 451. Here, the defendant had knowledge of the danger to customers from the loose greens which were removed at the checkstand. Hence its provision of brooms and dustpans, instructions to its employees about sweeping. As to the presence of the lettuce on the floor before the accident and the sweeping of the area in question, there was some conflict in the evidence, which was properly resolved by the jury.

Nor is there any merit in defendant's contention that the instruction based on *Hatfield* v. *Levy Bros.*, *supra*, 18 Cal.2d 798, was erroneous. ■ Defendant also contends that the following instruction is erroneous: "You are instructed when a store is open for business, one who enters it to purchase

some commodity or service does so at the implied, if not the express, invitation of the owner of the store, and is called an invitee. Upon that owner the law places the duty of exercising ordinary care so as not unnecessarily to expose the invitee to danger or accident and, to that end, to keep in a reasonably safe condition the aisles, passageways and general store premises made available for the invitee's use and which the latter is expressly or impliedly invited to use.

"In applying the rules of law that have been and will be stated by the Court to the facts of this case, and in judging the conduct of the parties, you may consider the fact that the attention of persons who visit public stores ordinarily is attracted by the display of wares offered for sale and may be more or less absorbed by the transactions which they have in mind. You may consider whether the defendant anticipated that fact with ordinary care in the exercise of the duty heretofore mentioned; also whether the plaintiff did or did not share that ordinary experience of store visitors, and if so, what effect that fact had on her conduct in relation to the cause of the accident, if any." In *Tuttle* v. *Crawford, supra,* 8 Cal.2d 126, the court said at 130: "That it is the duty of storekeepers to keep the floors of their premises safe for those who must pass over them in the transaction of their business must be conceded. The fact that the attention of persons who visit public markets is attracted by the display of the wares offered for sale and more or less absorbed by the transactions which they have in mind would seem to increase the necessity of exercising care to the end that the floor spaces and aisles allotted to the use of customers should be made safe and kept fit for such purpose." Nor is a customer obligated to keep his eyes on the floor. In *Wills* v. *J. J. Newberry Co.,* 43 Cal. App.2d 595 [111 P.2d 346], at page 601 the court stated: "Defendant operated a retail store for the purpose of selling goods to customers. In order to promote sales the goods were displayed on counters to attract the attention of the customers. It should be trite to suggest that a customer could not look at the goods on the counters and at the same time keep his eyes on the floor. Since it was the intention of defendant that its customers should see the goods displayed on the counters, and not have to watch the floor, it should have realized that dangerous substances on the floor would create a dangerous condition and should have acted accordingly." The instruction also properly leaves the question of

contributory negligence to be determined by the jury. Therefore we find no error in the above quoted instruction.

Defendant further maintains that the court erred in refusing its proposed instruction number 8 which dealt solely with the terrazzo corridor and made no reference to the customers' aisle. Instructions numbers 23, 24 and 25 cover this matter adequately. Furthermore, the record revealed that defendant along with other tenants had the duty of keeping the terrazzo corridor clear and that defendant did actually sweep it.

There is also no merit in defendant's final argument that the refusal to instruct on unavoidable accident was prejudicial. (*Slovick* v. *James I. Barnes Constr. Co.*, 142 Cal.App.2d 618 [298 P.2d 923] ; *Lilley* v. *Key System Transit Lines*, 136 Cal. App.2d 737 [289 P.2d 517].)

In view of the foregoing the judgment must be affirmed. *Judgment affirmed.*

Dooling, J., and Draper, J., concurred.