Filed 10/31/13  Norman v. Westfield Group CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHELLE E. NORMAN, | B245053 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC454568) |
| v. | |
| WESTFIELD GROUP, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven Kleifield, Judge.  Affirmed.

Der-Parseghian Law Group and Mary Der-Parseghian for Plaintiff and Appellant.

Beatty & Myers, Sean D. Beatty, John W. Myers IV, and Maija Olivia for Defendant and Respondent.

In this slip and fall case, the trial court granted defendant's motion for summary judgment and entered judgment for defendant. We reject plaintiff's contentions on appeal and affirm.

## BACKGROUND

On November 10, 2009, plaintiff Michelle E. Norman slipped and fell while descending a staircase leading to the food court area at Westfield Mall (mall) in Culver City. The mall is owned and operated by defendant Culver City Mall, LP (erroneously sued as Westfield Group dba Westfield Culver City Mall).

Defendant contracted with MBM, which specializes in mall "housekeeping" services. MBM was responsible for providing janitorial, cleaning, housekeeping, trash removal, and other services as needed to properly maintain the mall in a "'neat, safe and clean'" condition. Defendant also contracted with Professional Security Consultants (PSC) to provide private security guards at the mall.

It is undisputed that immediately after plaintiff fell on the staircase, she told the security guards and paramedics who responded to the scene that she "missed the bottom step" and fell. Consistent with this explanation, the paramedic's report stated that plaintiff "was walking down steps when she missed last step causing fall." Photographs taken of the location where plaintiff fell did not depict any "debris, object or substance" on the staircase.[1]

On February 7, 2011, plaintiff filed the instant personal injury complaint alleging that she slipped and fell on "debris" on the staircase, which created a "dangerous and defective" condition. At her deposition, plaintiff stated she "never saw" the object, but felt something round and cylindrical beneath her shoe. Plaintiff also testified that immediately after she fell, she repeatedly told everyone that she missed the last step and

---

[1]     Pursuant to PSC's standard practices, a security guard placed a Motorola walkie-talkie on the staircase to mark the location identified by plaintiff and photographed the area marked by the walkie-talkie.

fell: "Q  Do you recall whether or not the younger security guard asked you how your fall occurred? [¶] A  Yes. [¶] Q  And what did you tell him? [¶] A  I told him it was the bottom step. That's all I ever told everybody after — after the first two people started asking me questions, I did not feel like answering any more questions. Whenever anyone asked me what happened, I said I missed the bottom step. I remember repeating that a lot."

Plaintiff's accident was recorded on the mall's "surveillance video," which was viewed by each party's expert witness. According to the declaration of plaintiff's expert witness Kenneth Alvin Solomon, the video was not sufficiently clear to determine whether there was any debris on the stairwell. However, the video depicted "a misstep, in which Plaintiff Norman stepped too far forward on the last stair tread with her left foot, causing it to slip off and downward."

Defendant's expert witness John Brault similarly stated in his declaration that "the mechanics of plaintiff's fall depicted in the surveillance video are consistent with her overstepping the last step with her left foot as she looks to her left away from stairway without using reasonable care. The mechanics of plaintiff's fall are inconsistent with plaintiff slipping on a cylindrical object, as she testified."[2]

## I.      Defendant's Motion for Summary Judgment

Defendant moved for summary judgment based on two alternative theories: (1) there was no evidence that defendant was at fault in causing the accident, which the evidence indicated was caused solely by plaintiff's own negligence in missing the last step; and (2) there was no evidence that defendant had actual or constructive notice of a dangerous condition in time to correct it.

As to the second theory, defendant argued that even if the fall was caused by an unknown object on the staircase, there was no evidence that defendant knew or should have known about the object. (Citing *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200,

---

[2]      Based on his examination of the staircase, Brault concluded that it "meets industry standards and is suitable for pedestrian walking, in dry conditions."

1203 (*Ortega*).)  Defendant stated in relevant part:  "Here, it is undisputed that defendant had no actual or constructive notice of this 'dangerous' condition.  Plaintiff admitted that she *never* even saw the object she fell on.  The photographs and surveillance video taken of the incident do *not* show any object on the stairs.  Plaintiff has no idea how long the unknown object, if there was one, was on the staircase.  It is well established that the mere fact alone that plaintiff slipped does not automatically impute defendant with negligence.  Plaintiff cannot simply guess, assume, or surmise how long this allegedly 'dangerous' condition existed.  [¶]  Further, Culver City Mall took more than reasonable steps to ensure that the mall was kept free of slip/trip hazards.  The mall had MBM employees assigned to the [dining] terrace area and were on constant duty before, during and after mall hours to ensure that the dining area terrace remained clean [and] to detect and remove any litter, debris, spills or other hazardous conditions.  Moreover, on the day of the incident MBM employee Juana Bautista was assigned to the [dining] terrace area [and] inspected the subject staircase . . . within 20-30 minutes before plaintiff's alleged fall (at approximately 3:30 p.m.-3:40 p.m.), [and found] <u>no</u> debris, objects or substance on the staircase."

In support of the above contention, defendant submitted the declarations of Jose Aguilar, MBM's loss prevention manager, and Juana Bautista, the MBM employee who was assigned to keep the staircase and surrounding vicinity clear of any spills or debris on the date in question.

According to Aguilar's declaration, the staircase "was continuously patrolled on the date of incident and at a minimum every 20-30 minutes."  MBM employees would "continually inspect the [mall's] dining terrace area, including all walking surfaces in the dining terrace area, throughout the day and would immediately remove any lit[t]er, debris or spills."

According to Bautista's declaration, on the date of the accident she "constantly inspected the [dining] terrace area including the entry staircase," which she inspected at "a minimum every 20-30 minutes."  About 20 to 30 minutes before plaintiff fell, Bautista inspected the staircase and found "no debris, objects or substance on the staircase."

4

According to her deposition testimony, Bautista inspected the staircase every 15 to 20 minutes. When asked how she knew the inspections were conducted every 15 to 20 minutes, Bautista replied, "That's how we were trained to work."

Bautista also testified that MBM required its employees to record their cleanup activities on a "Sweep Sheet." However, Sweep Sheets were not used to record the times of each and every inspection; Sweep Sheets were only used to record the times when actual cleanup work was performed. The Sweep Sheet for the date of plaintiff's accident contained entries made by Bautista at 1:10, 1:30, 1:55, 2:09, 2:30, 2:49, 2:55, 3:10, 3:20, 3:35, 3:50, and 4:00 p.m. Only two of those entries (1:30 and 2:55 p.m.) reflected her cleanup work on the staircase; the other entries reflected work she performed in other areas.

## II.      Plaintiff's Opposition

In opposition to the motion, plaintiff relied on her own testimony—that she slipped and fell on a round object—to establish that her injury was caused by a dangerous condition. Plaintiff argued the surveillance video was of poor quality and thus was not dispositive "[a]s to whether there was in fact debris on the stairs."

As to her original explanation—that she missed the step and fell—plaintiff claimed she said that because she was in pain and did not feel like answering any more questions. According to her declaration: "I was being peppered with questions, and . . . due to the pain I was experiencing, I did not feel like answering any more questions, so when a security guard asked me how I fell, I simply told him I missed the bottom step."

Plaintiff argued that because defendant's evidence was not sufficient to establish the frequency of MBM's inspections, it may be inferred that defendant had constructive notice of the debris on the staircase. Plaintiff stated in relevant part: "Defendant maintains that the staircase where the incident occurred was 'continuously patrolled on the date of incident at a minimum of every 20-30 minutes.' However, the MBM employee who was assigned to patrol the dining terrace on the date of the incident (Juana

5

Bautista) did not keep a record of the frequency of her 'patrols' of the staircase where the incident occurred. She maintained a 'sweep sheet,' but the entries on the sweep sheet refer to specific actions taken and don't record the frequency of the patrols. The sweep sheet for the dining terrace, or food court, area for November 10, 2009 makes only two references to the staircase: one at 1:30 p.m., about an hour before Ms. NORMAN fell, and one at 2:55 p.m., about 25 minutes after the incident."

Plaintiff argued that Bautista's testimony—that she knew she inspected the staircase at 15- to 20-minute intervals because "[t]hat's how we were trained to work"— was based solely on the existence of a schedule and therefore was not probative "of when, or how frequently, the area in question was inspected." Plaintiff contended the mere existence of a policy or schedule "does not mean that it was enforced or adhered to."

### III.    Defendant's Reply

In reply, defendant argued that plaintiff's testimony that she slipped and fell on a round object was insufficient to establish the existence of a dangerous condition, in light of (1) plaintiff's original explanation that she missed the last step, and (2) the lack of any evidence to corroborate her claim that she slipped on an unseen object.

As to the failure to keep a written record of each and every inspection of the stairs, defendant argued the lack of a written record was "of no consequence" because the evidence, including Bautista's testimony, was sufficient to support a finding that the stairs were inspected every 15 to 30 minutes. Defendant further argued that the frequency of inspections was "more than reasonable. Moreover, during her inspections at least 30 minutes before the incident, Bautista did not see any debris or cylindrical object on the stairs."

### IV.    The Trial Court's Ruling and Judgment

On September 7, 2012, the trial court granted the motion for summary judgment, stating there were no triable issues "of material fact as to actual or constructive notice."

6

On October 17, 2012, the court signed and filed a formal order, which stated in relevant part: "Defendant established through the declaration and testimony of Juana Bautista that the subject stair case was inspected every 15-30 minutes. Plaintiff did not submit evidence to contradict Ms. Bautista's declaration and testimony. Furthermore, plaintiff did not submit any evidence that defendant's inspection of the stair case was unreasonable or not within industry standards. Since defendant provided evidence that it performed reasonable inspections of the staircase no inference [may be] drawn that defendant Culver City Mall, LP was on constructive notice of any dangerous condition."

On November 8, 2012, plaintiff filed a notice of appeal from the October 17, 2012 order granting the motion for summary judgment. On November 30, 2012, the court entered judgment for defendant and awarded defendant costs of $6,940.[3]

## DISCUSSION

Plaintiff argues that defendant was required to show, as a matter of law, that defendant: (1) lacked actual or constructive knowledge of a dangerous condition; (2) conducted timely inspections of the staircase; and (3) did not have a reasonable opportunity to detect and correct the dangerous condition. Plaintiff contends that because Bautista's testimony concerning the frequency of inspection was inconsistent and based solely on the existence of a schedule, defendant failed to meet its burden of proof. In addition, plaintiff argues the summary judgment must be reversed under *McKenney v. Quality Foods, Inc.* (1957) 156 Cal.App.2d 349 (*McKenney*). For the following reasons, we conclude the contentions lack merit.

---

[3] The appeal was taken from the October 17, 2012 order granting summary judgment, which is not an appealable order. (Code Civ. Proc., § 904.1; *Modica v. Merin* (1991) 234 Cal.App.3d 1072, 1073-1074.) However, where, as here, the notice of appeal was prematurely filed before the entry of judgment, we are authorized to treat the notice as one filed immediately after the entry of judgment. (Cal. Rules of Court, rule 8.104(d).)

7

## I.    Standard of Review

According to section 437c, subdivision (p)(2) of the Code of Civil Procedure, "A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.  Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.  The plaintiff or cross-complainant may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."

We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1196.)  In performing our independent review of the evidence, "we apply the same three-step analysis as the trial court.  First, we identify the issues framed by the pleadings.  Next, we determine whether the moving party has established facts justifying judgment in its favor.  Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue."  (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.)

In determining whether there are triable issues of material fact, we consider all the evidence set forth by the parties, except that to which objections have been made and properly sustained.  (Code Civ. Proc., § 437c, subd. (c); *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 334.)  We accept as true the facts supported by plaintiff's evidence and the reasonable inferences therefrom (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 148), resolving evidentiary doubts or ambiguities in plaintiff's favor (*Saelzler v. Advanced Group 400*, *supra*, 25 Cal.4th at p. 768).

## II. A Store Owner's Liability for a Dangerous Condition of Unknown Origin

The complaint alleged that plaintiff slipped and fell on "debris" on the staircase, which constituted a dangerous condition. The complaint stated in relevant part that "[d]efendants knew or through their exercise of reasonable care should have known, that such conditions constituted a dangerous condition and unreasonable risk [of] harm" to plaintiff.

The evidence showed, however, that plaintiff never saw any debris, but felt a round object beneath her shoe. Plaintiff failed to mention the round object to the security guards who responded to the incident and the object was never found. There was no evidence of how or when the object first appeared on the staircase.

In general, where there is no evidence that the store owner created the dangerous condition or how long it existed, "evidence of the owner's failure to inspect the premises within a reasonable period of time is sufficient to allow an inference that the condition was on the floor long enough to give the owner the opportunity to discover and remedy it. [Citation.]" (*Ortega*, *supra*, 26 Cal.4th at p. 1203.) Although the owner of a store "is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe. [Citation.]" (*Id.* at p. 1205.) "A store owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved. [Citation.] If the owner operates a self-service grocery store, where customers are invited to inspect, remove, and replace goods on shelves, 'the exercise of ordinary care may require the owner to take greater precautions and make more frequent inspections than would otherwise be needed to safeguard against the possibility that such a customer may create a dangerous condition by disarranging the merchandise' and creating potentially hazardous conditions. [Citation.] 'However, the basic principle to be followed in all these situations is that the owner must use the care required of a reasonably prudent [person] acting under the same circumstances.' [Citation.]" (*Ibid.*)

Where the source of the dangerous substance is unknown, proof of constructive notice may be a required element of the plaintiff's case. "Where the dangerous condition

is brought about by . . . third persons . . . or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises.  His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it." (*Hatfield v. Levy Brothers* (1941) 18 Cal.2d 798, 806; see *Ortega*, *supra*, 26 Cal.4th at p. 1206 [quoting from *Hatfield*].)

> A. *Defendant's Evidence Showed That Bautista Inspected the Staircase Every 15 to 30 Minutes*

Defendant presented evidence that on the date of the accident, Bautista inspected the staircase at 15- to 30-minute intervals and, during her inspection of the staircase about 30 minutes before the accident, found no dangerous condition.  This was consistent with the store policy which called for inspection at 20- to 30-minute intervals.  Appellant has not contested the reasonableness of that policy, nor presented any evidence it should not apply in this case.  The trial court deemed the evidence sufficient to shift the burden to plaintiff, who was therefore required to show that defendant either had constructive notice of the dangerous condition or was negligent in failing to discover it earlier.

On appeal, plaintiff contends that the trial court erred in crediting defendant's evidence, which she claims failed to show the inspections were conducted at 15- to 30-minute intervals on the date of the accident.  In plaintiff's view, the evidence merely showed the existence of an inspection policy but nothing more.  The evidence, according to plaintiff, "is inadequate, because it establishes only <u>what the policy was concerning inspections, and not whether it was carried out on the date of the incident</u>.  Just because a policy or schedule is established does not mean that the policy was enforced or adhered to.  Without further support, Ms. Bautista's testimony is not probative on the issue of when, or how frequently, the area in question was inspected, particularly in light of

10

inconsistencies in her testimony. The mere existence of an inspection policy is insufficient to establish a lack of constructive notice as a matter of law."

We are not persuaded by plaintiff's arguments, which do not accurately reflect the substance of Bautista's testimony. When Bautista was asked to explain how she knew she inspected the staircase at 15- to 20-minute intervals, she replied, "That's how we were trained to work." Her response, in our view, was simply another way of stating that it was her custom and habit to inspect the staircase at the intervals specified by her employer. (See Evid. Code, § 1105 ["Any otherwise admissible evidence of habit or custom is admissible to prove conduct on a specified occasion in conformity with the habit or custom."].) Because we conclude her testimony that she inspected the staircase every 15 to 30 minutes was based on personal knowledge, there was no lack of foundation and the trial court did not err in relying on it.

Accordingly, the record supports the trial court's determination that defendant's evidence, including Bautista's declaration and testimony, was sufficient to shift the burden of proof to plaintiff, who was obligated to show "that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) Because plaintiff failed to meet that burden, the motion was properly granted.

### B. *The McKenney Case Is Distinguishable*

Plaintiff contends the judgment should be reversed under *McKenney*, *supra*, 156 Cal.App.2d 349, a slip and fall case in which summary judgment for the plaintiff was affirmed. We disagree.

In *McKenney*, a customer (plaintiff) was shopping in defendant's grocery store when she slipped and fell on a piece of lettuce that was on the floor near checkstand number 5. "About five minutes before the accident, the attendant at checkstand number 5 removed lettuce or cabbage leaves from merchandise she was ringing up on the cash register." (*Id.* at p. 354.) Defendant knew that upon request, its checkstand operators would routinely remove any lettuce or cabbage leaves from the customer's produce that

11

"didn't look good or edible." (*Ibid.*) Because defendant "knew that greens handled by its employees at the checkstand would fall from the counter to the floor," defendant "provided garbage receptacles under the checkstand." (*Ibid.*) After noting that "[t]he quantum of care which the law exacts is a question relative to the facts of each case," the appellate court affirmed summary judgment for plaintiff, because "it can fairly be inferred that defendant was responsible for the vegetable matter on the floor and that plaintiff's fall was caused by slipping on such matter." (*Id.* at p. 355.)

*McKenney* is clearly distinguishable. The facts in that case readily supported an inference that the dangerous substance—a leaf—had fallen to the ground after being removed from a customer's produce by the clerk at checkstand number 5, which was a routine practice that defendant facilitated by placing "garbage receptacles under the checkstand." (156 Cal.App.2d at p. 354.) In this case, on the other hand, there was no evidence as to how or when the unknown object first appeared on the staircase. The unknown object in this case, unlike the lettuce leaf in *McKenney*, was not tied to any of defendant's routine operations or activities. Because there was no evidence in this case that the alleged hazardous condition was created by the activities of defendant or its employees or contractors, *McKenney's* analysis does not apply here.

## DISPOSITION

The judgment is affirmed. Defendant is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

SUZUKAWA, J.

We concur:

EPSTEIN, P. J.          MANELLA, J.

12