[Civ. No. 8446. Third Dist. Nov. 22, 1954.]

HELEN HALE et al., Appellants, v. SAFEWAY STORES, INC. (a Corporation), Respondent.

Goldstein, Barceloux & Goldstein, R. M. Watt, J. Oscar Goldstein, P. M. Barceloux and Burton J. Goldstein for Appellants.

Ware & Ware, A. B. Ware and Ware & Kurz for Respondent.

WARNE, J. pro tem.*—This is an appeal from a judgment of nonsuit. Plaintiffs sued defendant for damages sustained by plaintiff Helen Hale as a result of a fall in defendant's store. The trial was by the court sitting without a jury. At the close of the plaintiffs' case, defendant moved

---

*Assigned by Chairman of Judicial Council.

for a nonsuit. The motion was granted and judgment entered accordingly. Plaintiffs appeal.

On September 1, 1951, Mrs. Hale, hereinafter referred to as appellant, went to the Safeway Store in Gridley to do her weekly shopping. It was about 4:30 p. m., and she was accompanied by her 10-year-old boy. The layout of the store was typical of most Safeway Stores; that is, the fruit and vegetable section was at the front and to one side of the store, the cashiers' stands were at the front extending to the other side of the store, the meat department was to the rear of the fruit and vegetable section on the same side of the store, and the rest of the floor was taken up with displays for canned goods and other merchandise; the storeroom for surplus goods, etc., was to the rear of the store. The racks for canned goods and other merchandise were about 6 feet in height. Appellant walked through the turnstile and entered the fruit and vegetable section where she made her first selection. She then obtained some meat in the meat department, then, in other sections, some fruit, frozen vegetables, some canned goods and other household items. Appellant went to the cashier's stand and got in line, and while standing there awaiting her turn, noticed that she had forgotten to get some lemons. She left her son in the line at the cashier's stand and went back to the fruit and vegetable section. She obtained lemons, weighed them, and started to return to her place in the cashier's line. After taking only a step or two she slipped on a banana and fell. Her next recollection was of a man offering to help her up, then she became unconscious. Upon regaining consciousness she noticed that she was sitting on the window sill of the store and that the manager was there. While sitting there appellant saw a squashed banana on the floor, a mark on the floor which her shoe had made and banana on her dress, shoe and hose.

Mr. Hensley, referred to as the manager, did not see the accident. He was notified thereof and immediately went to see Mrs. Hale. He also noticed banana on her shoe, the side of her leg, and on her dress. He saw the banana on the floor about 6 or 8 inches from the end of the counter. This was in the same vicinity as the scale plaintiff used in weighing the lemons. He inspected the banana and found that it had some small teeth marks in one end, and that it appeared to have burst open, that is, it had not been peeled. From this last testimony it is argued the banana had been dropped on the floor by a small child who had tried to bite into the fruit without peeling it, and had failed.

For a period of from 15 to 30 minutes before the accident, the manager was in his office in the storeroom, out of view of the customers, doing some clerical work. He testified as follows: Aside from the meat department, there were six other employees on duty that afternoon, and they were all working at the cashiers' stands at the time of the accident. Three cashiers' stands were operating at the time, two employees to each stand; one employee was checking the groceries and the other was boxing them up. This was a busy Saturday afternoon, and that was the reason all the employees were working at the checking stand. During the time that appellant was there some 30 other customers were also in the store. He thought that Mr. Brubaker, the employee in charge of the fruit and vegetable section, had been working at the cashier's stand for the same period before the accident, 15 to 30 minutes, that he had been in his office. He did not remember the length of time that elapsed between the last cleaning of the floor in the fruit section and the accident. Appellant testified that she was in the store for a period of 30 to 45 minutes before the accident. She did not know how long the banana was on the floor, nor how it got there. She stated that generally when she shopped Mr. Brubaker was present in the area of the fruit and vegetable section, but on this Saturday she did not see any employee in that area during the entire time she was in the store. She said that while she was standing in line she saw Mr. Brubaker working at the cashier's stand. She did not see any small children in the store during the time that she was shopping. Appellant admitted that she was not watching the fruit and vegetable section during the entire time she was in the store; that she was busy with her shopping and that a child could have been present, but she said she just didn't see any children or employees in that section.

Mr. Brubaker was called as a witness under section 2055 of the Code of Civil Procedure. He testified that he was in charge of the fruit and vegetable section, and that he knew Mrs. Hale as a customer of the store. He stated that he had been helping ''box out'' groceries at the cashier's stand on the day of the accident, but his work there was intermittent, and only when his help was needed during the rush period. He then testified that shortly before the accident he left the check stand and swept the floor of the produce department with a broom, and at that time there was no banana on the floor, and that after such sweeping he went into the storeroom

to obtain supplies of produce to replenish the stock on the counters. He stated that it was between five and twelve minutes from the time he finished sweeping until he came out of the storeroom and saw Mrs. Hale after the accident. Mr. Brubaker had received the same instructions given all regular employees in regard to any substance on the floor, which was that it should be picked up whenever and wherever it was seen. It must be noted that his testimony is inconsistent as to his location at the time of the accident. Prior to stating that he was in the storeroom as shown above, he was asked by plaintiffs' counsel: "Q. At the time of the accident, you were over at the checking counter, were you not? A. Just temporarily, yes." This confirms appellant's testimony in regard to Brubaker's location immediately before the accident. There is no direct evidence as to the length of time the banana had been on the floor. The record shows that no inspection of the area had been made for a period of from 12, 15, 30 or more minutes before the accident. There is no evidence of any children in the store.

The sole issue before us on this appeal is whether or not the nonsuit should have been granted on the state of the evidence as above set forth. There is no testimony to the effect that appellant was not injured as a result of her fall.

The law on this subject regarding a business invitee is well established. ■ A review of the law in cases in California in regard to this subject matter is contained in *Ahern* v. *S. H. Kress & Co.*, 97 Cal.App.2d 691, 693 [218 P.2d 108]:

" ' . . . the owner or occupier of business premises owes to invitees a duty to exercise reasonable care in keeping the premises reasonably safe for such invitees. (*Tuttle* v. *Crawford*, 8 Cal.2d 126 [63 P.2d 1128], etc.) ■ To impose liability for injuries suffered by an invitee due to the defective condition of the premises, the owner or occupier "must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he had discovered it." ' (*Hatfield* v. *Levy Brothers*, 18 Cal.2d 798, 806 [117 P.2d 841])."

■ In *Louie* v. *Hagstrom's Food Stores, Inc.*, 81 Cal.App. 2d 601, the court, at page 607 [184 P.2d 708], stated:

"The true rule is that, while plaintiff must prove that the

defective condition existed long enough so that by the use of reasonable care it should have been discovered and remedied, that fact, like other facts, may be proved by circumstantial as well as by direct evidence. ▮ It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it.''

And, in *Hatfield* v. *Levy Brothers, supra,* the court at page 807 declared:

''Further, the question of whether the condition which caused the injury had existed so long as to be discoverable by the store owner within a reasonable time is for the jury.''

▮ In regard to this element, the court, in *Louie* v. *Hagstrom's Food Stores, Inc., supra,* at page 608 stated:

''The exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, because, obviously, it varies according to the circumstances. A person operating a grocery and vegetable store in the exercise of ordinary care must exercise a more vigilant outlook than the operator of some other types of business where the danger of things falling to the floor is not so obvious.''

The case of *Girvetz* v. *Boys' Market, Inc.,* 91 Cal.App.2d 827 [206 P.2d 6], cited by respondent, has facts which are almost identical with the case at bar, except as to the element of time the dangerous condition had existed. The suit involved a plaintiff who had slipped on a banana peel in the defendant's vegetable store. The *only* evidence as to how long the peel had been there was the testimony that someone had seen it there a minute and a half before the plaintiff fell. After a jury verdict for the plaintiff, the court granted a judgment notwithstanding the verdict. In affirming the judgment, the appellate court said:

''Viewing the case, as we must, in the light most favorable to plaintiff, it appears that her fall was the result of a dangerous condition existing on the floor of the defendant's market, with approximately 15 employees within a radius of 15 feet from the scene of the accident, but that the circumstances are such as to afford no basis for an inference that the condition was created by the proprietor or his employees. The question is whether, in the circumstances, it can be inferred that the dangerous condition had existed for such a length of time as to justify charging the defendant with lack of ordinary care in failing to discover and remedy it before

the plaintiff was injured. As stated in *Louie* v. *Hagstrom's Food Stores, supra,* at page 608, the exact time the condition must exist before it should, in the exercise of reasonable care, have been discovered and remedied, cannot be fixed, but varies according to the circumstances. It may be conceded that ordinary care in the case of a public market involves a more vigilant outlook than in the case of an apartment house lobby. It *might also be conceded that the presence of a condition such as was shown in the circumstances of this case for as long as 10 or 15 minutes would in all probability be held to justify submitting the cause to the jury . . .* Obviously, the exact time that a dangerous condition must exist in order to charge the proprietor cannot be stated as a matter of law. . . .'' (Emphasis added.)

Respondent cites the case of *Vaughn* v. *Montgomery Ward & Co.,* 95 Cal.App.2d 553 [213 P.2d 417], as authority for upholding the ruling on the nonsuit, but it is not applicable, as there the court held that the plaintiff had failed to prove that any foreign substance was on the floor. All she proved was that she had fallen, and the court stated that the doctrine of res ipsa loquitur was not applicable in such situation; but in the instant case, there was no question that there was a foreign substance, the banana, on the floor. The question to be decided is: Was it there so short a length of time that it can be said as a matter of law that respondent did not have the opportunity to discover it and remove it?

The rule on a motion for a nonsuit is aptly stated by the Supreme Court in *Blumberg* v. *M. & T. Inc.,* 34 Cal.2d 226 [209 P.2d 1].

''A trial court is justified in granting a motion for nonsuit '. . . when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiability to support a verdict in favor of the plaintiffs.' [Citing cases.] As stated in *Estate of Lances, supra* [216 Cal. 397 (14 P.2d 768)], page 400, 'Unless it can be said as a matter of law, that . . . no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.' ''

██ The rules as to nonsuit are the same, whether the trial is by the court or by a jury. (*Szopieray* v. *West Berkeley etc. Co.*, 194 Cal. 106 [227 P. 720]; *Freese* v. *Hibernia Sav. etc. Soc.*, 139 Cal. 392 [73 P. 172]; *Goldstone* v. *Merchants' etc. Co.*, 123 Cal. 625 [56 P. 776].) ██ In regard to the duty of a reviewing court where the appeal is from an order of nonsuit, the Supreme Court stated that in such cases ". . . the appellate court must view the evidence as though judgment had gone in favor of the appellant, and order a reversal if such a judgment can be sustained." (*Raber* v. *Tumin*, 36 Cal.2d 654 at page 656 [226 P.2d 574].) ██ And in *Turner* v. *Ralph M. Parsons Co.*, 117 Cal.App.2d 109 at 113 [254 P.2d 970], the court stated:

"The cases indicate that nonsuits should be granted sparingly and only in those situations where there is rightfully no factual issue for a jury to decide. If the evidence is of such a nature that a judgment for plaintiff can on no theory be sustained, then a nonsuit is clearly proper."

██ Viewing the evidence, as we must, in the light most favorable to the appellant, and applying the law as above stated, we are of the opinion that the evidence in this case presented a factual issue upon which a judgment for appellant could be sustained, and that the judgment of nonsuit was not proper. The question was not one of law to be measured by some rule of time. Especially is this so when one takes into consideration the manager's testimony that he had been in his office between 15 and 30 minutes and he thought that Brubaker had been working at the cashier's stand for the same length of time; Brubaker's testimony that probably 12 minutes elapsed from the time he swept the aisle until he came out of the storeroom and saw Mrs. Hale after the accident; the testimony that no inspection had been made during that time; the testimony of appellant that she saw Brubaker working at the cashier's stand, and, also her testimony, though negative, that she had been in the store for a period of 30 to 45 minutes and did not see any employees or children in that area during the time she was there; also the testimony that it was a busy Saturday afternoon, and that, aside from employees in the meat department, all other employees were working at the cashiers' stands. These are facts from which a jury might draw a legitimate inference that the respondent, in the operation of its fruit and vegetable section, should have, in the exercise of ordinary prudence, discovered the dangerous condition and remedied it.

Concededly a person operating a fruit and vegetable section in a store should at least, as to that portion of the premises, in the exercise of ordinary care, maintain a more vigilant outlook than would be required in the operation of some other type of business where the danger of things falling on the floor upon which a person might easily slip and fall is not so obvious.

The judgment is reversed.

Van Dyke, P. J., and Schottky, J., concurred.

Respondent's petition for a rehearing was denied December 15, 1954.