[Civ. No. 18440.   First Dist., Div. Two.   July 17, 1959.]

GERALDINE SAPP, Respondent, v. W. T. GRANT
COMPANY (a Corporation), Appellant.

Mullally & Wines for Appellant.

Smith & Parrish for Respondent.

O'DONNELL, J. pro tem.*—On January 29, 1957, plaintiff, while shopping at defendant's variety store, stepped on a spool of thread lying in one of the aisles and was thrown to the floor, receiving physical injuries. She brought this action for damages. The jury returned a verdict in her favor on which judgment was entered. Defendant appeals from that judgment on the sole ground that the evidence is insufficient to justify the verdict.

The store building is about 200 feet long and about 100 feet wide. There are aisles and cross-aisles throughout the store. There were 37 employees of defendant on duty on the day of the accident. The store is operated partially on a self-service basis, that is, while clerks are available to serve the

---

*Assigned by Chairman of Judicial Council.

customers still a customer is free to take a desired article from a counter or shelf and take it directly to the cashier to complete the purchase.

That it was a spool of thread on which plaintiff stepped, causing her fall, and that it came from the shelves of defendant's store are facts that find substantial support in the evidence and are not strenuously disputed by defendant. Plaintiff testified that when she slipped her foot went forward "right up from under me." A spool of thread was found, immediately following the accident, about 3 feet in front of where plaintiff lay. The thread was a brand carried by defendant. The aisle in which plaintiff fell was in the notions department. The thread display was in the notions department and is, according to the testimony of one witness, only 4 or 5 feet from where plaintiff fell. Defendant's arguments are directed principally to the contention that there is no evidence to show how the spool came to be on the floor, nor is there any evidence to show how long it had been there before plaintiff stepped on it.

It is not disputed that plaintiff was an invitee of defendant while shopping in the latter's store. Defendant therefore owed plaintiff the duty of exercising ordinary care to keep the premises in a safe condition. (*Tuttle* v. *Crawford,* 8 Cal.2d 126 [63 P.2d 1128].)

There is no evidence in the case from which it can be inferred that the spool was dropped by one of defendant's employees, rather than by a customer of the store. Plaintiff having failed to sustain her burden of proof in that regard the liability of defendant depends on whether or not the evidence brings the case within the following rule:

"Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it." (*Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, 806 [117 P.2d 841].)

And in *Louie* v. *Hagstrom's Food Stores, Inc.,* 81

Cal.App.2d 601, 607 [184 P.2d 708], the court says: "It is generally a question of fact for the jury as to whether, under all the circumstances, the defective condition existed long enough so that a reasonable man exercising reasonable care would have discovered it." Thus, in the Louie case it appeared that plaintiff slipped in a pool of syrup that had been spilled on the floor of defendant's grocery store. The evidence was that no employee of defendant had examined this area for from 15 to 25 minutes before the accident. The court held that whether the dangerous condition existed long enough so that a person exercising ordinary care would have discovered it was a question for the jury. In *Hale* v. *Safeway Stores, Inc.*, 129 Cal.App.2d 124 [276 P.2d 118], plaintiff while shopping in defendant's store slipped on a banana. There was evidence that the banana may have been on the floor for from 30 to 45 minutes. Again it was held that whether defendant should have discovered and removed the banana within this time was a jury question.

Returning to a discussion of the facts of the case at bar, it appears that the notions department was in charge of a Mrs. Whitman. She was the only employee assigned to that department. It further appears that each clerk was allowed a 20-minute "coffee break" during the day. It was the established procedure, as testified to by Mr. Rawsen, the store manager, that when a clerk was going on her coffee break she informed one of the girls in one of the neighboring departments that she was leaving and that other girl would then see that customers were taken care of in her area. In other words, "that the floor was covered."

On the day of the accident Mrs. Whitman left the notions department for her coffee break at 3 :40 p. m. She was still absent from the notions department when plaintiff fell, which was about 4 p. m. Although Mrs. Whitman testified that she didn't remember whether she did or did not notify any of the other clerks that she was leaving, the following circumstances indicate that she did not, and that the notions department was unattended during her absence. As plaintiff lay on the floor following her fall she called to a woman who was two counters away for help. The woman agreed to go for help. At about that time a Mrs. Thompson, also a clerk in the store, came down the aisle in which plaintiff lay, on the way to her coffee break. She saw no one other than plaintiff in the aisle.

With respect to the store rules regarding inspection of the aisles Mrs. Thompson testified as follows:

"Q. Did you have any instruction at the time that you went to work there from Mr. ———— or Mrs. Rawsen or anybody else about inspecting the aisles periodically, making sure that the aisles are clean, making sure that there is no merchandise on the floor and that sort of thing?

"A. Well, it is one of your duties to keep your department clean at all times.

"Q. At all times, is that right? A. Yes.

"Q. That includes the aisles, I assume, is that right?

"A. Yes.

"Q. Well, is that one reason why you tell the girl in the adjoining department that you are going on your coffee break?

"A. That, and to help out with the customers."

The relevancy of such testimony to the ultimate issue of negligence is shown in *Powell* v. *Pacific Electric Ry. Co.*, 35 Cal.2d 40 [216 P.2d 448], a case dealing with the operating rules of respondent railway company governing speed of its trains at crossings. In that case the Supreme Court said (pp. 46-47): "The rule was properly admitted in evidence as bearing on the standard of care respondent thought appropriate to insure the safety of others at its track crossings. [Citations.] While a violation of such rule would not constitute negligence *per se*, it would be a circumstance for the jury to consider on the issue of respondent's negligence. [Citations.] The court so instructed the jury as to the legal effect of the rule—that while 'not the law,' a 'breach of duty' might be implied from a finding of violation of the rule."

The following facts, to wit: that the customers of defendant's store are free to help themselves to articles on the shelves and counters, that a spool of thread lying loose on the floor obviously creates a hazardous condition, and that defendant's employees were instructed to keep the aisles clean "at all times" were, when considered together, sufficient to support the implied finding of the jury that ordinary care dictated that defendant have a clerk in attendance at the notions department at all times. And the jury could have further concluded, as it undoubtedly did, that had a clerk been on duty she probably would have seen the spool and picked it up before plaintiff stepped on it. (See *Spolter* v. *Four-Wheel Brake Serv. Co.*, 99 Cal.App.2d 690 [222 P.2d

307], for a discussion of the subject of a jury's power to draw inferences.).

We are of course mindful of the rule, referred to hereinabove, that an invitor is entitled to have a reasonable time within which to discover and correct a dangerous condition on his premises. We are also mindful of defendant's contention that there is nothing in the evidence to indicate the length of time the spool had been on the floor. However, this latter factor loses significance when placed vis-a-vis the fact that the notions department remained unsupervised for a period of 20 minutes; for no matter what the interval of time the spool lay there it would have gone undetected during this 20-minute period. In effect, therefore, the critical question in the case was this: Was a 20-minute interval between inspections of the aisles comensurate with the exercise of ordinary care by defendant? This is a question that was properly left with the jury to decide.

The judgment is affirmed.

Dooling, Acting P. J., and Draper, J., concurred.