[Civ. No. 24340.   Second Dist., Div. Three.   Oct. 17, 1960.]

VIRGINIA FRAZIER, Appellant, v. YOR-WAY MARKET,
INC. (a Corporation), Respondent.

392

Thomas D. Griffin for Appellant.

Hunter & Liljestrom and Clark Mangum Hunter for Respondent.

FORD, J.—This is an appeal from a judgment of nonsuit in a trial before a jury. The action was one for the recovery of damages suffered by the plaintiff when she fell in an aisleway in the market of the defendant.

Pertinent testimony on the issue of liability will be summarized. The plaintiff testified that on February 25, 1958, between 2:30 and 3 o'clock in the afternoon, she was in the food market for the purpose of shopping. As she proceeded down an aisleway between two counters, pushing her shopping cart, she felt something on her foot which reminded her of a skate. She did not see the object before she stepped on it. It was a rack, rectangular in shape, made of dark metal, and was "possibly from 24 to maybe 28 inches long." Its position was in the middle of the aisle between the counters. When her foot hit it, it moved along the floor. As she tried to prevent the fall, she went sideways and hit her head on a bin or table. She saw no man, woman or child in the area of her fall, except that she vaguely remembered seeing a woman. She did not recall seeing anyone in the aisleway or any children playing around the area before she reached that section. The next day, the assistant manager showed her the broken or displaced rack and the table against which she had fallen.

On cross-examination, the plaintiff stated that the grill-like object upon which she stepped was the "bottom row" of a display stand. She did not know whether it was entirely out of place or partially in place on the display stand but only that she stepped on it and it "slid" with her. Thereafter she testified that the rack or shelf was away from the stand but she did not know how far away it was. She was looking at the merchandise on the shelves. The accident occurred at some point between certain vegetable counters and another counter, the contents of which the plaintiff did not know.

The assistant manager of the store, Ragnar Back, was called as a witness by the plaintiff under the provisions of section 2055 of the Code of Civil Procedure. One of his duties was to see that the aisleways were safe and unobstructed. In answer to a question as to whether he had been through the store 10 or 15 minutes before the accident was reported to him, he answered: "No doubt. I'm all over the store." He further testified: "Q. Do you recall being down in this section of the store near the vegetable counter and the grocery counters that afternoon? A. I probably had been by there a number of times. Q. Do you remember if you were down in that section—how long before this accident was reported to you? A. Well, I couldn't tell you exactly how long before that because when a person is in and around all day long, you don't keep exact time, but I had been through that section there, the frozen food section, which I take care of, and write orders for, and I'm down that way quite often, as well as other parts of the store. Q. Do you have any routine or regular route that you follow in checking your aisleways? A. Well, they are checked daily as you go along all the time. You are always constant [*sic*] on the alert for it. Q. Do you use any route or method to make sure that all the aisles are checked? A. Well, you are constantly checking it all the time as you are going through. Q. Is there anyone else that checks it besides you? A. Oh, yes, the manager. He checks it. Q. Was the manager on duty with you that date? A. Yes, he was. Q. Where was he? Do you know? A. I don't recall where he was at that time. Q. I will ask you again, do you have any method of or particular route that you follow in inspecting the vegetable counters? Do you walk around each bin or do you have any method, and then go back to the back of the store? A. You don't use the same method each day. I mean, one day you may come from one side and the other day from the other side, but you inspect as you go along each day." He described the display stand

and the removable racks or shelves thereon. At the time of the accident, he saw the plaintiff on the floor between the bread table and the vegetable rack or bin. When asked if he could state from his recollection when it was that he had passed this particular spot prior to the accident, he answered: ''Well, I couldn't tell you the exact time I went by there in the routine of the day's work, you are going by there any number of times, but the exact time I could not say.'' He came on duty that day at 1 o'clock in the afternoon. After being asked if he could state if he had passed this location from that time until he saw the plaintiff on the floor, his testimony was as follows: ''No doubt I did. I couldn't say exactly what time, no doubt I have, because—when, during the course of the day, when I come in there —— THE COURT: It is only a matter of memory. Do you remember whether you did or not? THE WITNESS: No doubt I have been. THE COURT: What do you mean 'no doubt'? Do you remember that you did? It is a question of memory. THE WITNESS: Well, to say that you have gone by between that time, I would say that I had, yes. Q. BY MR. GRIFFIN [counsel for Plaintiff] : Do you remember looking at the rack or anything to refresh your recollection about seeing this rack on that day? A. No. If there is nothing out of the ordinary, you just walk by and that's it. Q. I believe your statement is that you think you walked by the rack? A. I think I no doubt did. Q. Do you recall whether the bottom shelf of that rack was hooked onto the stand, or whether it was lying on the floor? Do you remember? A. I don't remember. Q. When this rack is hooked or when it is in place, how far off the floor would it be? A. Oh, approximately 6 or 8 inches. Q. That would be up the side of the stand and hooked in? A. Yes. Q. If it were lying flat on the floor, how high, how far off the ground would it stand, or what would be the thickness of it? A. Approximately a quarter of an inch or three-eights [*sic*].'' There was a vegetable man employed in the store but part of his time was spent in a back room. The witness could not state at what time the floor was swept on that afternoon. He did not know what caused the plaintiff to fall.

█ In determining whether the granting of a nonsuit was proper, the appellate court must resolve every conflict in the evidence in favor of the plaintiff, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of the plaintiff, and accept as true all evidence adduced, direct and indirect, which tends to sustain the case of the plaintiff. (*Coates* v. *Chinn,*

51 Cal.2d 304, 306-307 [332 P.2d 289]; *Holtz* v. *United Plumbing & Heating Co.,* 49 Cal.2d 501, 505 [319 P.2d 617].)
In passing upon such a motion it is not, of course, the function of the trial court to weigh the evidence or judge of the credibility of witnesses. (*Kersten* v. *Young,* 52 Cal.App. 2d 1, 7-8 [125 P.2d 501].) Upon such a motion, testimony adduced pursuant to section 2055 of the Code of Civil Procedure is to be treated as evidence in the case insofar as it is favorable to the plaintiff. (*Crowe* v. *McBride,* 25 Cal.2d 318, 319 [153 P.2d 727].)

The law applicable to the issue of negligence in this case has been succinctly stated in *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798, at page 806 [117 P.2d 841], as follows: "Where the dangerous condition is brought about by natural wear and tear, or third persons, or acts of God or by other causes which are not due to the negligence of the owner, or his employees, then to impose liability the owner must have either actual or constructive knowledge of the dangerous condition or have been able by the exercise of ordinary care to discover the condition, which if known to him, he should realize as involving an unreasonable risk to invitees on his premises. His negligence in such cases is founded upon his failure to exercise ordinary care in remedying the defect after he has discovered it or as a man of ordinary prudence should have discovered it." It was stated in *Bridgman* v. *Safeway Stores, Inc.,* 53 Cal.2d 443, at page 447 [2 Cal.Rptr. 146, 348 P.2d 696]: "The requirement of actual or constructive knowledge is merely a means of applying the general rule stated above that the proprietor may be liable if he knew or by the exercise of reasonable care could have discovered the dangerous condition, and it does not alter the basic duty to use ordinary care under all the circumstances." Such negligence may be established by circumstantial evidence "which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts." (*Hatfield* v. *Levy Brothers, supra,* 18 Cal.2d 798, 805; *Jones* v. *Hotchkiss,* 147 Cal.App.2d 197, 202 [305 P.2d 129].) Whether a dangerous condition has existed long enough for a reasonably prudent person to have discovered the peril is a question of fact and exact time limitations cannot be imposed since each case must be viewed in the light of its own circumstances. (*Louie* v. *Hagstrom's Food Stores,* 81 Cal.App.2d 601, 607-608 [184 P.2d 708]; *Lehman* v. *Richfield Oil Corp.,* 121 Cal. App.2d 261, 265 [263 P.2d 13].)

In the case presently before this court, the evidence sustained an inference that the shelf or rack was on the floor in the aisleway and constituted a hazard to shoppers. There was no direct evidence as to the period of time which elapsed between the moment when such object, by whatever means or cause, was placed in that position and the time of the accident. However, the assistant manager, whose duty it was to inspect the premises for conditions which would imperil patrons, was unable to state just when there had been an inspection of the area of the accident in the one and a half or two hours which elapsed between the time he entered upon his duties and the accident. The governing law was stated by Mr. Chief Justice Gibson in *Bridgman* v. *Safeway Stores, Inc., supra,* 53 Cal.2d 443, at page 447: "It obviously follows that the owner of a store must make reasonable inspections of such portions of his premises as are open to his customers, and, in this connection, it has been held that evidence that an inspection had not been made within a particular period of time prior to an accident may warrant an inference that the defective condition existed long enough so that a person exercising reasonable care would have discovered it. (*Sapp* v. *W. T. Grant Co.,* 172 Cal.App.2d 89, 91-92 et seq. [341 P.2d 826] [patron stepped on spool of thread; no inspection for a period of 20 minutes] ; *Hale* v. *Safeway Stores, Inc.,* 129 Cal.App.2d 124, 128 et seq. [276 P.2d 118] [customer slipped on banana; no inspection for a period of '12, 15, or 30 or more minutes'] ; *Louie* v. *Hagstrom's Food Stores, Inc.,* 81 Cal.App.2d 601, 607-609 [184 P.2d 708] [patron slipped in pool of syrup; no inspection for between 15 to 25 minutes].) As declared in these cases, it is ordinarily a question of fact for the jury whether, under all the circumstances, the defective condition existed long enough so that it would have been discovered by an owner who exercised reasonable care."

In *Hale* v. *Safeway Stores, Inc.,* 129 Cal.App.2d 124, the evidence is summarized as follows at page 128 [276 P.2d 118] : "There is no direct evidence as to the length of time the banana had been on the floor. The record shows that no inspection of the area had been made for a period of from 12, 15, 30 or more minutes before the accident. There is no evidence of any children in the store." The appellate court reversed a judgment of nonsuit, stating at page 131: "The question was not one of law to be measured by some rule of time. Especially is this so when one takes into consideration the manager's testimony that he had been in his office between 15 and 30 minutes

and he thought that Brubaker had been working at the cashier's stand for the same length of time; Brubaker's testimony that probably 12 minutes elapsed from the time he swept the aisle until he came out of the storeroom and saw Mrs. Hale after the accident; the testimony that no inspection had been made during that time; the testimony of appellant that she saw Brubaker working at the cashier's stand, and, also her testimony, though negative, that she had been in the store for a period of 30 to 45 minutes and did not see any employees or children in that area during the time she was there; also the testimony that it was a busy Saturday afternoon, and that, aside from employees in the meat department, all other employees were working at the cashiers' stands. These are facts from which a jury might draw a legitimate inference that the respondent, in the operation of its fruit and vegetable section, should have, in the exercise of ordinary prudence, discovered the dangerous condition and remedied it." (See also *Shaw* v. *Colonial Room,* 175 Cal.App.2d 845, 848 [1 Cal.Rptr. 28].)

In *Sapp* v. *W. T. Grant Co.,* 172 Cal.App.2d 89 [341 P.2d 826], while shopping at the variety store of the defendant, the plaintiff stepped on a spool of thread which was on the floor in one of the aisleways, and was thrown to the floor. On appeal from a judgment for plaintiff, the defendant contended that there was no evidence which indicated how the spool came to be on the floor and no evidence which showed how long it had been there before plaintiff stepped on it. There was no evidence from which it could be inferred that the spool had been dropped by one of the defendant's employees rather than by a customer. In rejecting the defendant's contentions, the court said at page 94: "We are of course mindful of the rule, referred to hereinabove, that an invitor is entitled to have a reasonable time within which to discover and correct a dangerous condition on his premises. We are also mindful of defendant's contention that there is nothing in the evidence to indicate the length of time the spool had been on the floor. However, this latter factor loses significance when placed vis-a-vis the fact that the notions department remained unsupervised for a period of 20 minutes; for no matter what the interval of time the spool lay there it would have gone undetected during this 20-minute period. In effect, therefore, the critical question in the case was this: Was a 20-minute interval between inspections of the aisles commensurate with the exercise of ordinary care by defendant? This is a question that was properly left with the jury to decide."

■ It is thus clear that the plaintiff was entitled to have her case submitted to the jury and that the judgment entered upon the granting of the nonsuit must be reversed, unless other matters sustain the determination of the trial court. We turn now to such matters.

■ The respondent asserts that: "Plaintiff could have seen or observed the location of the shelf in the middle of the aisle had she exercised ordinary care and caution during her shopping tour in the market; the location of the shelf in the middle of the aisle was open, apparent, obvious and visible to plaintiff, and the location of the shelf in the center of the aisle was *not a latent or concealed peril.*" The appellant testified that she did not see the object on the floor before she actually stepped on it but she did see it as she stepped on it. She said: "It was a dark metal, black, where it was dark metal." Before her fall, she was looking at the merchandise on the shelves. It cannot be said that, as a matter of law, the appellant was guilty of contributory negligence. ■ The reasoning of the court in *Louie* v. *Hagstrom's Food Stores, supra,* 81 Cal.App.2d 601, is applicable in the present case. It was there said at page 610: "The next contention of defendant is that the evidence, as a matter of law, shows contributory negligence. The contention is predicated upon plaintiff's evidence that she did not look at the floor as she walked towards the entrance of the store. This point is without merit. It is elementary law that contributory negligence becomes a question of law when, and only when, from the facts, reasonable men can draw but one inference, and that an inference that points unerringly to the negligence of plaintiff contributing to the injury. In all other cases the question of contributory negligence is one of fact for the jury. (See discussion and cases cited in *DeGraf* v. *Anglo California Nat. Bank,* 14 Cal.2d 87 [92 P.2d 899]; *Parker* v. *Manchester Hotel Co.,* 29 Cal.App.2d 446 [85 P.2d 152]; *Tuttle* v. *Crawford,* 8 Cal. 2d 126 [63 P.2d 1128].) The exact point now urged by defendant—that the customer is obligated to keep his eyes on the floor—was decided adversely to defendant's contention in *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595, at page 601 [111 P.2d 346], where it was stated: 'Defendant operated a retail store for the purpose of selling goods to customers. In order to promote sales the goods were displayed on counters to attract the attention of the customers. It should be trite to suggest that a customer could not look at the goods on the counters and at the same time keep his eyes on the floor.

Since it was the intention of defendant that its customers should see the goods displayed on the counters, and not have to watch the floor, it should have realized that dangerous substances on the floor would create a dangerous condition and should have acted accordingly.' '' (See also *Shipman* v. *Norton,* 154 Cal.App.2d 90, 95-96 [315 P.2d 906].)

The inference to be drawn from the appellant's testimony was that her fall was caused by a shelf or rack which had been removed from the display stand and was lying on the floor of the aisleway. However, in her complaint it was alleged: ''That at said time and place, as aforesaid, Defendants and each of them carelessly and negligently maintained and operated said premises in such a manner so as to cause a display rack to be placed in one of the aisles or walkways used by the patrons of said business, that Plaintiff, while walking along said aisle or walkway, was tripped by said display rack and caused to fall to the floor of said premises.'' But there is no indication in the record that the respondent was harmed by any variance between the pleading and the proof. In this connection, it is to be noted that the deposition of the plaintiff had been taken. The applicable law is stated in *Lehmann* v. *Mitchell,* 109 Cal.App.2d 719, at pages 725-726 [241 P.2d 573], as follows: ''Respondents make the further point that the proven facts are different from those alleged in the complaint and that the variance is fatal. However, they do not point out wherein they have been misled by the claimed variance. As is said in the recent case of *Hayes* v. *Richfield Oil Corp.,* 38 Cal.2d 375, 382 [240 P.2d 580] : 'A variance between the allegations of a pleading and the proof will not be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense on the merits . . .' It is not indicated that either respondent has been misled as to the real issues of fact involved in the case.'' (See also *Devens* v. *Goldberg,* 33 Cal. 2d 173, 177 [199 P.2d 943] ; *Gudelj* v. *Gudelj,* 41 Cal.2d 202, 212 [259 P.2d 656] ; *Boyd* v. *White,* 128 Cal.App.2d 641, 647 [276 P.2d 92].)

In the light in which the evidence must be viewed on a motion for a judgment of nonsuit, it is clear that the motion should not have been granted.

Reversed.

Shinn, P. J., and Vallée, J., concurred.