99 Cal.Rptr.2d 451 (2000)
83 Cal.App.4th 175
Richard M. ORTEGA, Plaintiff and Respondent,
v.
KMART CORPORATION, Defendant and Appellant.
No. B131083.
Court of Appeal, Second District, Division One.
August 21, 2000.
Review Granted November 15, 2000.
*452 Law Offices of Diane Goldman and Diane Goldman, Los Angeles, for Defendant and Appellant.
Law Office of Richard A. Lense and Richard A. Lense, for Plaintiff and Respondent.
ORTEGA, J.
Plaintiff and his fiancee were shopping in defendant's market. At the milk aisle, plaintiff put a carton of milk into his shopping cart and immediately slipped on a puddle of milk. He suffered significant injuries to his knee, including ligament tears. The jury awarded him $47,200 in damages. The trial court denied defendant's motions for a new trial and for judgment notwithstanding the verdict.
Neither side can point to any evidence of how long the puddle was there before plaintiff slipped on it. Plaintiff argues that because of defendant's shoddy cleanup policy, it can be inferred the puddle was there long enough that defendant reasonably should have discovered it. Defendant says plaintiff must demonstrate the puddle was there long enough to establish constructive notice.
We have looked at a plethora of similar cases. One line of cases seems to compel a reversal in favor of defendant. Another line, which we are required to follow because of a California Supreme Court case, compels affirming the judgment. California law provides that if a plaintiff establishes a shoddy inspection practice by a merchant, the trier of fact can infer the substance was on the floor long enough that a reasonable inspection would have led to its discovery. We affirm the judgment.

DISCUSSION
Defendant's general manager testified that no particular employee was responsible for policing spills or other hazards. Each employee was to be on the lookout for such dangers. No written records were kept of spills and management was not notified of whether or when inspections were made. The witness admitted that a spill could conceivably go undetected for two hours.
Without benefit of quotation marks and brackets, we set forth BAJI No. 8.20 as it applies to this case: The owner of premises is not negligent and is not liable for an injury suffered by a person on the premises which resulted from a dangerous or defective condition of which the owner had no knowledge, unless the condition existed for such a length of time that if the owner had exercised reasonable care in inspecting the premises the owner would have discovered the condition in time to remedy it or to give warning before the injury occurred. Nor may the owner be found to be negligent if, having exercised ordinary care, he discovered such a condition before the time of the injury, but not long enough before to provide him the time reasonably necessary to remedy the condition or to give reasonable warning or to provide reasonable protection.
*453 "Plaintiff ha[s] the burden of producing evidence of the existence of the condition complained of for at least a sufficient time to support a finding that defendants had constructive notice thereof." (Perez v. Ow (1962) 200 Cal.App.2d 559, 561, 19 Cal.Rptr. 372.)
In Wills v. J.J. Newberry Co. (1941) 43 Cal.App.2d 595, 111 P.2d 346, "shortly before the accident [in the store] a small boy had vomited in one of the main aisles near a cross aisle. There were several sales girls on duty in the immediate vicinity of the vomitus. [¶] Florence Lazarus, in walking down the aisle[,] slipped on the vomitus and fell to the floor. Several sales girls saw that she had fallen and pressed buzzers to give the alarm and call those in authority. They did nothing more to protect any customer against a similar fall.... [¶] Four or five minutes after Miss Lazarus had fallen, plaintiff, in walking down the aisle, slipped in the vomitus and fell, causing the injuries for which she recovered judgment." (Id. at p. 599, 111 P.2d 346.)
While the evidence did not demonstrate that any sales girl actually saw the putrid substance, or that the defendant store had actual knowledge of its presence, the appellate court held the circumstances were sufficient to place the defendant on constructive notice before the plaintiff fell.
In Van Wye v. Robbins (1941) 48 Cal. App.2d 660, 120 P.2d 507, the defendant ran a market adjacent to a service station. He had an arrangement with the service station allowing his customers to park in the latter's lot. An elderly man walking out of the market to his car slipped and fell on grease "which in all probability had fallen from a car which was being greased on a rack located on the service station premises." (Id. at p. 662, 120 P.2d 507.) The defendant "conced[ed] that he never inspected the parking area to see whether it was free of grease or not." (Ibid.) The trial court found the grease had probably been present for more than 20 minutes. The appellate court held this evidence was sufficient to justify the factual finding that this was sufficient time to put the defendant on constructive notice.
In Louie v. Hagstrom's Food Stores (1947) 81 Cal.App.2d 601, 184 P.2d 708, the plaintiff slipped on a puddle of syrup. The puddle was at the base of a post located near the entrance to the food store and near the cashier's station. There was some confusion over the testimony of when the area had been swept, but the manager testified he periodically swept the entire store. It took about 15 minutes to do so. He had just finished sweeping when the accident occurred. There was also testimony about the syrup. It was Karo brand. "... Karo is a thick syrup that does not flow freely; [the day of the accident] was a cold day; [ ] syrup will flow more freely under conditions of warmth than under cold conditions; [ ] Karo is thick and adhesive and does not flow freely; [ ] if Karo were dropped on the floor it would `just sit there before it began to gradually ooze out.'" (Id. at p. 605, 184 P.2d 708.)
Notwithstanding the manager's testimony that he had just swept, the contradictory evidence justified the jury's contrary conclusion that the syrup had been on the floor for quite a while and that the cashier, whose duties required her to frequently turn toward the post, should have seen the spill.
In Blumberg v. M. & T. Incorporated (1949) 34 Cal.2d 226, 209 P.2d 1, the plaintiff, a woman wearing high heels, fell when the heel of her shoe caught in the floor mat in the lobby of an office building. It "was constructed of small pieces or strips of rubber or similar material held together in a row, running in both directions at right angles, with open spaces of varying sizes...." (Id at p. 228, 209 P.2d 1.) A nonsuit granted the defendant was reversed. "[T]he size of the openings was inherently dangerous for the San Francisco women who wear such heels for street use, and the property owner knew, or *454 should have known, of such danger." (Ibid.)
In Ahern v. S.H. Kress & Co. (1950) 97 Cal.App.2d 691, 218 P.2d 108, "[t]he oily puddle in which plaintiff [ ] fell was directly underneath the part of the counter that juts over the aisle, partly in the aisle and partly underneath. This counter contained paints, oils, paint remover and thinner and related substances.... There was no broken bottle, can, bag or anything similar on the floor near the puddle, from which this oily substance could have come.... There was a salesgirl of defendant store's on duty in charge of the counter.... [F]rom those facts the jury was entitled to draw an inference that the puddle was the result of some leakage from the contents of the counter, and ... was also entitled to infer that this circular oily puddle, 12 inches in diameter, had taken some time to accumulate, because if it had accumulated rapidly it would not have been confined to such a small area." (Id. at p. 698, 218 P.2d 108.)
In Tuttle v. Crawford (1936) 8 Cal.2d 126, 63 P.2d 1128, the plaintiff, "a woman in middle life" (id. at p. 127, 63 P.2d 1128), fell on a wet spot in a market. The jury ruled in her favor. "Water dripping from heads of lettuce which had been immersed in tubs or bins containing water to freshen them had formed a pool on the floor as the lettuce was transported from the tubs and placed on the racks or display stands.... [P]ortions of lettuce leaves and particles of vegetable matter ... within the wet area, also contributed to the fall[.]" (Id. at p. 128, 63 P.2d 1128.)
In Lehman v. Richfield Oil Corp. (1953) 121 Cal.App.2d 261, 263 P.2d 13, the plaintiff slipped on a spot of oil after using a phone booth at defendant's service station. A witness saw "old grease stains and a fresher oil stain the size of a silver dollar which appeared to have been there several hours but `was still one day fresh.' It was flat and had soaked in to some extent." (Id. at p. 263, 263 P.2d 13.) The stains were still there several days later. A nonsuit granted the defendant was reversed.
In Hale v. Safeway Stores, Inc. (1954) 129 Cal.App.2d 124, 276 P.2d 118, there was conflicting evidence about how long the banana which caused plaintiffs fall had been on the floor. The unpeeled banana had small teeth marks on it, which led to the inference that "the banana had been dropped on the floor by a small child who had tried to bite into the fruit without peeling it, and had failed." (Id. at p. 126, 276 P.2d 118.) The plaintiff was accompanied by her 10-year-old son, but had seen no other small children in the store during the 30 to 45 minutes she had been there. In addition, the store was busy at the time and evidence indicated that "aside from employees in the meat department, all other employees were working at the cashiers' stands." (Id. at p. 131, 276 P.2d 118.) In spite of contradictory testimony from an employee that he had swept the area 12 minutes before, the other evidence would have justified a finding that the banana had been on the floor significantly longer, enough to provide constructive notice. Nonsuit for the store was reversed.
In McKenney v. Quality Foods, Inc. (1957) 156 Cal.App.2d 349, 319 P.2d 448, the practice of the market was to have the checkout counter clerks clean produce and drop discarded remnants on the floor. Orders were to clean up immediately. Brooms and dustpans were located within reach. An employee testified he had swept the area 5 to 10 minutes before plaintiff slipped on lettuce and fell, but had not swept or inspected the aisle where she fell. Other employees denied seeing anyone sweep during that time frame. The evidence was sufficient to establish actual knowledge of an existing danger in that vegetable matter was regularly being placed on the floor and required immediate clean-up.
In Travis v. Metropolitan Theatres Corp. (1949) 91 Cal.App.2d 664, 205 P.2d 475, plaintiff was walking down the aisle in defendant's theater when she slipped on *455 vomitus and fell. The defendant contended "that there is no evidence as to how long the defective condition existed, and that therefore only by guess, conjecture or surmise could the jury have determined that defendant should have discovered it." (Id. at p. 667, 205 P.2d 475.) However, there was evidence the "slippery, repulsively odoriferous substance" (id. at p. 666, 205 P.2d 475) had been there for some time, "long enough to form a crust on its surface. [A witness] testified that the substance was dry on top with a crust like a pie but moist in the middle, that it was light yellow in the center and dark brown elsewhere." (Id. at p. 668, 205 P.2d 475.) In spite of contrary evidence, this justified the conclusion that the "pie" had been there more than long enough to put defendant on constructive notice.
In Lopez v. Superior Court (1996) 45 Cal.App.4th 705, 52 Cal.Rptr.2d 821, there was evidence "the floor of the market was inherently defective and dangerous because it was `improperly finished' and became slippery when littered with produce, and ... that it was common for the floor of the market to be littered with grapes." (Id. at pp. 715-716, 52 Cal.Rptr.2d 821, some internal quotation marks omitted.)
In Olsen v. Roos-Atkins (1962) 208 Cal. App.2d 259, 25 Cal.Rptr. 190, the employee janitor slipped on a piece of dry blackened banana peel that was still wet enough to be slippery. The stairway where he slipped had not been inspected for several hours. This was plainly sufficient to show the peel had been on the step for a significant time.
In all of these cases a question was whether the evidence supported the conclusion that the defendant knew, or by reasonable inspection or otherwise should have known, about the danger. In several, the defendants argued, as in the instant matter, that the evidence failed to show when the substance was deposited on the floor and that only speculation could produce the conclusion that it had been there long enough to put the defendant on constructive notice.
"In general, all the authorities [above] are distinguishable, in that they involve either conditions created by the proprietor or circumstances from which it could be inferred that the condition had existed for an appreciable length of time, thus presenting a question for the jury." (Girvetz v. Boys' Market, Inc. (1949) 91 Cal.App.2d 827, 831, 206 P.2d 6.)
In Girvetz, the jury gave the plaintiff an award and the trial court then granted defendant judgment notwithstanding the verdict. The appellate court upheld the judgment for defendant. The plaintiff slipped on a banana in an aisle "flanked on one side by the liquor department and on the other by the candy department." (Girvetz v. Boys' Market, Inc., supra, 91 Cal.App.2d at p. 828, 206 P.2d 6.) This evidence indicated the banana had probably been dropped by a customer. "The only evidence as to how long the dangerous condition had existed prior to plaintiffs fall was the testimony of a customer that she saw the banana on the floor `a good minute and a half before the happening of the accident." (Ibid.)
"The fact alone that a dangerous condition existed at the time the accident occurred will not warrant an inference that the defendant was negligent. There must be some evidence, direct or circumstantial, to support the conclusion that the condition had existed long enough for the proprietor, in the exercise of reasonable care, to have discovered and remedied it. [Citations.]" (Girvetz v. Boys' Market, Inc., supra, 91 Cal.App.2d at p. 829, 206 P.2d 6.)
Plaintiff Girvetz argued that an inference adverse to the market could be drawn from the store manager's less than sterling testimony about the store's inspection practices. "This argument is unsound, since the burden rested upon the plaintiff to present evidence warranting an inference of negligence before any unfavorable inference could be drawn from the failure of the defendant to present evidence in rebuttal." (Id. at p. 830, 206 P.2d 6.)
*456 "It might ... be conceded that the presence of a condition such as was shown in the circumstances of this case for as long as 10 or 15 minutes would in all probability be held to justify submitting the cause to the jury. But where the only evidence is that the foreign object has been on the floor of the market for `a minute and a half,' it must be held that it is insufficient to support an inference that the defendant proprietor failed to exercise the care required of him." (Girvetz v. Boys' Market, Inc., supra, 91 Cal.App.2d at p. 831, 206 P.2d 6.)
The above cases would seem to call for a reversal in defendant's favor.
We move on to the cases that compel affirmance. In Sapp v. W.T. Grant Co. (1959) 172 Cal.App.2d 89, 341 P.2d 826, the plaintiff stepped on a spool of thread and fell. The spool was of a type sold by defendant and was on the floor in the notions department where thread was carried. There was no way to know whether the spool had been dropped by a customer or an employee. "Defendant's arguments [were] directed principally to the contention that there is no evidence to show how the spool came to be on the floor, nor is there any evidence to show how long it had been there before plaintiff stepped on it." (Id. at p. 91, 341 P.2d 826.)
The store clerks were instructed to constantly monitor the aisles and keep them clean. The clerk in charge of the notions department took a 20-minute coffee break and apparently did not notify anyone to cover her area during that period. The fall occurred at the end of the 20-minute period. From this, the appellate court concluded this provided constructive notice, "for no matter what the interval of time the spool lay there it would have gone undetected during this 20-minute period. In effect, therefore, the critical question in the case was this: Was a 20-minute interval between inspections of the aisles commensurate with the exercise of ordinary care by defendant? This is a question that was properly left with the jury to decide." (Sapp v. W.T. Grant Co., supra, 172 Cal. App.2d at p. 94, 341 P.2d 826.)
The conclusion seems to be that since the spool could have been there for 20 minutes, it was.
In Beal v. Blumenfeld Theatres, Inc. (1960) 177 Cal.App.2d 192, 2 Cal.Rptr. 110, the theater ushers were instructed to use flashlights "to light the way of each patron to his seat." (Id. at p. 194, 2 Cal.Rptr. 110.) Presumably, this means they were required to escort each patron right to the seat. They were to keep the aisles and stairs free of obstructions. The plaintiff left the darkened theater to use the restroom. On the way back, the usher did not accompany her to her seat, but instead remained at the top of the stairs while shining her flashlight down the stairs. The plaintiff stepped on a man's hat and fell. There was no evidence how long the hat had been there. The trial court had granted the defendant's motion for nonsuit. The appellate court, relying in part on Sapp, reversed, holding that if the usher had done her job, the obstruction would have been discovered and the fall would have been prevented. The court did not specifically discuss constructive notice, but the case can be read to hold that since the usher should have provided actual notice the defendant received constructive notice.
In Frazier v. Yor-Way Market, Inc. (1960) 185 Cal.App.2d 390, 8 Cal.Rptr. 335, the market patron stepped on a rack that slid along the aisle, causing her to fall. Nothing indicated how long the rack had been on the floor. The employee responsible for monitoring the aisles was unable to say when the floor had been previously inspected. Citing Sapp, the appellate court reversed the nonsuit granted the defendant, declaring "`that evidence that an inspection had not been made within a particular period of time prior to an accident may warrant an inference that the defective condition existed long enough so that a person exercising reasonable care *457 would have discovered it. [Citations.]'" (Frazier, supra, at p. 396, 8 Cal.Rptr. 335.)
The California Supreme Court in Bridgman v. Safeway Stores, Inc. (1960) 53 Cal.2d 443, 2 Cal.Rptr. 146, 348 P.2d 696, compels that we affirm plaintiffs judgment. While the case was not a slip and fall (a display of pumpkins fell on the plaintiff, knocking her to the floor) the court cited Sapp with approval. The pumpkin display had not been inspected for 45 minutes. Echoing Sapp, the Supreme Court "held that evidence that an inspection had not been made within a particular period of time prior to an accident may warrant an inference that the defective condition existed long enough so that a person exercising reasonable care would have discovered it." (Bridgman, supra, at p. 447, 2 Cal.Rptr. 146, 348 P.2d 696; see also Mackoff v. Biltmore Garages, Inc. (1963) 222 Cal.App.2d 846, 850, 35 Cal.Rptr. 462.)[1]
The plain holding is that a plaintiff can be relieved of his burden of showing how long the substance was on the floor if he can demonstrate that the site has not been inspected within a reasonable time.
In the instant matter, the store's general manager testified no one was given sole responsibility for inspecting the aisles. All employees were charged with looking for spills and cleaning them up. However, there was no program in place to record inspections and clean-ups nor were employees required to notify management of inspections, spills, or clean-ups. The general manager testified the milk could have been on the floor for as long as two hours. To say the trial judge was singularly unimpressed with the general manager's testimony is to understate the situation. The judge observed that the witness was "devastating against the defense position." She called his testimony "shocking" and "a big problem."
The record contains no evidence to show the milk was on the floor for even a minute and a half, a length of time found wanting in Girvetz v. Boys' Market, Inc., supra, 91 Cal.App.2d 827, 206 P.2d 6. While the evidence justified a finding that defendant's inspection and clean-up practice was inadequate, this does not logically translate into affirmative evidence that the milk had been on the floor for any particular period of time. But under Sapp v. W.T. Grant Co., supra, 172 Cal.App.2d 89, 341 P.2d 826 and Bridgman v. Safeway Stores, Inc., supra, 53 Cal.2d 443, 2 Cal. Rptr. 146, 348 P.2d 696, this does not matter. Even in a superbly maintained market, a patron can slip on a substance that was spilled only seconds before. That individual cannot recover. If the market is poorly maintained and a patron slips on a substance spilled only seconds before, he can carry his burden of showing a breach of duty by demonstrating inadequate maintenance. This puts the premium on maintenance, *458 not on how long the spill went undetected.

DISPOSITION
The judgment in favor of plaintiff is affirmed.
MIRIAM A. VOGEL, J., concurs.
SPENCER, P.J., concurs in judgment only.
NOTES
[1] It has been pointed out that relieving the plaintiff of the burden of proving how long the substance was on the floor where the storekeeper lacked a reasonable cleaning and inspection policy may lead to the imposition of liability where there is no causation: "Courts that have simply ignored the knowledge requirement where there is evidence of a storekeeper's negligent failure to inspect have similarly eased the plaintiff's burden at trial. But these courts have failed to adequately address the issue of causation. Imposing the costs of accidents on storekeepers who do not follow a reasonable cleaning and inspection schedule may satisfy a commonsense notion of fairness, since such a rule would likely prevent some culpable storekeepers from escaping liability. However, this rule is overinclusive because it permits courts to impose liability where a storekeeper's negligence may not have caused the accident: A storekeeper's failure to inspect the premises does not necessarily lead to the conclusion that the dangerous condition existed long enough that he would have discovered it had he acted reasonably to inspect the premises. In Wal-Mart Stores, Inc. v. King [(Fla.Dist.Ct.App.1991) 592 So.2d 705, 707], a Florida court of appeals refused to permit an inference of constructive knowledge for this very reason." (Winegar, Reapportioning the Burden of Uncertainty: Storekeeper Liability in the Self-Service Slip-and-Fall Case (1994) 41 UCLA L.Rev. 861, 878.)